TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00635-CV







Herbert A. Schaefer, Appellant



v.



Texas County and District Retirement System, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 99-14137, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING






 Herbert A. Schaefer appeals a decision by the Texas County and District Retirement
System (1) to terminate his membership in the System after Schaefer withdrew his accumulated
contributions in February 1989. Following a hearing in which Schaefer sought reinstatement of his
membership, the Board adopted the administrative law judge's proposed decision upholding the
termination. On appeal, Schaefer argues first that the System incorrectly interpreted its governing
statute and unlawfully terminated his membership based on this interpretation. Second, he contends
that the System failed to comply with its statutory obligations to provide him with accurate
information about the terms of his membership, and because he relied on the inaccurate information
provided by the System, equity entitles him to restoration of his membership. For the reasons given
below, we affirm.


FACTUAL AND PROCEDURAL BACKGROUND

 Schaefer, who was born on September 13, 1946, estimates that he began working for
Bexar County in the District Clerk's Office on approximately June 1, 1965. With the exception of
a ten-month period, when Schaefer worked for the State of Texas as a court reporter, he remained
an employee of Bexar County from 1965 until December 31, 1982. On May 5, 1967, while Schaefer
was still employed with Bexar County, the Texas County and District Retirement System Act took
effect. See Act of April 12, 1967, 60th Leg., R.S., ch. 127, §§ I-XIV, 1967 Tex. Gen. Laws 240,
240-67 (Tex. Rev. Civ. Stat. Ann. art. 6228g, §§ 1-13, since repealed and codified at Tex. Gov't
Code Ann. §§ 841.001-845.507 (West 1994 & Supp. 2001)). Bexar County began participating in
the System, and its employees, including Schaefer, became members of the System on that date. See
id. ch. 127, sec. III, § 2(a), 1967 Tex. Gen. Laws at 243-44 (Tex. Rev. Civ. Stat. Ann. art. 6228g, § 3,
since repealed and amended).

 At that time, Schaefer had earned thirty-three months of prior service credit. (2) 
Schaefer remained an active member in the System until December 31, 1982. (3) On January 1, 1983,
he began working for the State of Texas as the Clerk of the Fourth Court of Appeals in San Antonio.
As such, he became a member of the Employees Retirement System of Texas rather than of the
Texas County and District Retirement System. His past deposits remained with the Texas County
and District Retirement System, however, and continued to earn interest until February 15, 1989,
when he requested a refund of his accumulated deposits, which totaled $33,008.14.

 The System sent Schaefer a refund check, accompanied by a memorandum, which
contained the following information and warnings:


[T]his is to call your attention to the fact that you have attained a vesting status with
this System. Vesting means that your length of service with your County or District
has earned you the right to leave your accumulated deposits with this System until
you attain the age of sixty (60) and then you may retire and receive a monthly
retirement allowance for the rest of your life. . . . 


Of course, the withdrawal of your accumulated deposits will terminate your
membership and result in the forfeiture of your right to a monthly retirement benefit.


If you desire to retain your . . . membership and thereby retain the right to receive a
monthly retirement benefit on attainment of age sixty (60), you should return the
enclosed check to our office immediately.


Please contact our office if you have any questions regarding your vested benefit.



Schaefer did not contact the System and cashed the check. The System then closed his account and
terminated his membership.

 Schaefer continued to work for the court of appeals and accumulated service credit
with the Employees Retirement System. Schaefer asserts that he did not learn about the
Proportionate Retirement Program until 1996, seven years after his membership in the Texas County
and District Retirement System ended. See Tex. Gov't Code Ann. §§ 803.001-.403 (West 1994 &
Supp. 2001). The Proportionate Retirement Program applies to all six of Texas's public retirement
systems, including the Texas County and District Retirement System. Id. § 803.0021(2) (West Supp.
2001). Subject to certain restrictions, the breadth of which the parties dispute, the Proportionate
Retirement Program permits state employees who have earned service credit by working in more
than one public retirement system to pool their total service credit to calculate retirement eligibility. 
See id. §§ 803.001, .201 (West 1994).

 The parties do not dispute how the Proportionate Retirement Program would have
operated in Schaefer's case had he left his funds on deposit with the Texas County and District
Retirement System. If Schaefer had not withdrawn his funds, he would have been subject to the
"Rule of 80." See Act of May 24, 1993, 73d Leg., R.S., ch. 536, § 4, 1993 Tex. Gen. Laws 2017,
2017 (Tex. Gov't Code Ann. § 844.210(c)(2), since amended). (4) According to this rule, an employee
who is less than sixty years old may retire when the sum of the employee's credited service and age
equals at least eighty. Id. Under the Rule of 80, Schaefer would have been eligible to retire in 1997
at the age of fifty, with thirty-one years of service credit. Without the benefit of the Proportionate
Retirement Program's Rule of 80, Schaefer cannot retire until age sixty, and his monthly allowance
from the Employees Retirement System will be lower than it would have been had he not withdrawn
his funds.

 In an effort to remedy this situation, on September 13, 1996, Schaefer wrote directly
to the Executive Director of the Texas County and District Retirement System requesting
reinstatement. He wrote a follow-up letter on September 20, 1996. The System denied reinstatement
in a reply letter dated September 23, 1996. (5) On June 1, 1998, Schaefer filed a formal request, styled
"Application for Confirmation of Membership, Membership Rights, Individual Account Status, and
Membership Benefit Eligibility," with the System. In a letter dated June 12, 1998, the System
formally denied Schaefer's request, which Schaefer appealed by filing a notice of appeal and
requesting a hearing. See 34 Tex. Admin. Code § 121.14 (2000).

 In a hearing on November 4, 1998, an administrative law judge issued a proposal for
decision denying Schaefer's request for reinstatement. The Board adopted the proposal in full in a
"Decision and Final Order" dated September 17, 1999. Schaefer appealed to Travis County District
Court, which affirmed the order.

 On appeal, Schaefer raises the two arguments he has made since his initial application
for reinstatement. First, he argues that a System member must be "absent from service" before
membership may be terminated. Schaefer asserts that he was not "absent from service" as that term
is used in the Proportionate Retirement Program Act, (6) and because he was not "absent from service,"
the termination of his membership by the System was unlawful. He next asserts that the System
failed to comply with its statutory duties to accurately inform him about his retirement eligibility,
and because he based his decision to withdraw on these inaccurate representations, the System is
equitably estopped from denying his right to reinstatement. We address each point in turn.

DISCUSSION

I. Statutory Construction

 In construing statutes, courts may look to the administrative interpretation of the
statute. (7) See Tex. Gov't Code Ann. § 311.023(6) (West 1998) (listing extrinsic aids on which a court
may rely "whether or not a statute is considered ambiguous"). Construction of a statute by the
administrative agency charged with its enforcement is entitled to serious consideration, as long as
the construction is reasonable and does not contradict the plain language of the statute. Steering
Comms. for the Cities Served by TXU Elec. & Cent. Power & Light Co. v. Public Util. Comm'n, No.
03-00-00469-CV, 2001 Tex. App. LEXIS 1700, at *6-7 (Austin March 15, 2001, no pet.); Gene
Hamon Ford, Inc. v. David McDavid Nissan, Inc., 997 S.W.2d 298, 305 (Tex. App.--Austin 1999,
pet. denied) (citing Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993)). As long
as the agency's ruling is a reasonable reading of the statute, this Court will affirm if that reading is
in harmony with the rest of the statute, even if other reasonable interpretations exist. See Steering
Comms., 2001 Tex. App. LEXIS 1700, at *7 (citing Gene Hamon Ford, 997 S.W.2d at 305).

 Schaefer argues that an employee who moves from one public retirement system to
another is not "absent from service" under the Proportionate Retirement Program Act. See Tex.
Gov't Code Ann. § 803.102(a), (c) (West 1994). The System responds that whether an employee
is absent from service is governed by the laws of the individual retirement systems and that although
an employee is not absent from service solely by becoming a member of another retirement service,
that employee may be absent from service once his or her membership is properly terminated on
another ground under the individual system's laws. The System urges that it properly terminated
Schaefer's membership based on provisions of the Texas County and District Retirement System
Act, specifically sections 842.108(a) and 842.109(a)(3). See id. §§ 842.108(a), .109(a)(3) (West
Supp. 2001). (8) At issue is the interaction between the Proportionate Retirement Program Act and the
Texas County and District Retirement System Act.

 Both acts are contained in Title 8 of the Texas Government Code, which addresses
public retirement systems. Id. §§ 801.001-855.607 (West 1994 & Supp. 2001). Subtitle A of Title
8 contains provisions that are generally applicable to retirement systems, id. §§ 801.001-810.001, 
and includes the Proportionate Retirement Program Act. Id. §§ 803.001-.403. Subtitles B through
G contain the laws governing the individual retirement systems. Id. §§ 811.001-855.607. The Texas
County and District Retirement System is governed by Subtitle F. Id. §§ 841.001-845.507. In the
event of a conflict between the provisions of the Proportionate Retirement Program Act and the acts
that govern the individual public retirement systems, section 803.003(a) provides, "The provisions
of [the Proportionate Retirement Program Act] are exceptions to the other laws governing retirement
systems to which this chapter applies and prevail over those laws to the extent of explicit conflict,
but this chapter must be construed strictly as against those laws." Act of May 10, 1991, 72d Leg.,
R.S., ch. 131, § 3, 1991 Tex. Gen. Laws 716, 717 (Tex. Gov't Code Ann. § 803.003, since
amended) (9) (emphasis added).

 Schaefer argues that the System could only terminate his membership if he was absent
from service when he withdrew his funds. See Tex. Gov't Code Ann. § 842.109. He argues,
however, that he was not absent from service as that term is defined under section 803.102 of the
Proportionate Retirement Program Act. Id. § 803.102(a), (c). Under this section,


(a) Membership in a retirement system to which this chapter [the Proportionate
Retirement Program Act] applies does not terminate because of absence from
service covered by that system during a period for which the member earns
service credit in another retirement system to which this chapter applies for
service performed for an employer other than a subdivision or municipality not
participating in the program provided by this chapter.


. . . .


(c) In this section, a person's absence from service begins on the day after the last
day of service covered by any retirement system to which this chapter applies.



Id. (emphasis added). Relying on subsection (c), Schaefer argues that he was not absent from all
retirement systems when he withdrew his funds because at that time he was a member of the
Employees Retirement System. He maintains that because he was not absent from service, it was
unlawful for the System to terminate his membership pursuant to section 842.109 of the Texas
County and District Retirement System Act. See id. § 842.109(a)(3). Schaefer also contends that
if there is any conflict between "absence from service" as it is used in the Proportionate Retirement
Program Act and the Texas County and District Retirement System Act, the usage in the
Proportionate Retirement Program Act should "trump" that of the System's Act according to the
terms of section 803.003. See Act of May 10, 1991, 72d Leg., R.S., ch. 131, § 3, 1991 Tex. Gen.
Laws 716, 717.

 The definition of "absence from service" in section 803.102, however, is inapplicable
here. Section 803.102(c), which defines "absence of service," begins with the phrase "[i]n this
section." Tex. Gov't Code Ann. § 803.102(c). That definition, then, is limited to section 803.102. 
We look to sections 842.108 and 842.109 to determine whether the System unlawfully terminated
Schaefer's membership. See id. §§ 842.108, .109.

 Section 842.108 provides that a person who is not employed by a participating
subdivision in the System may withdraw all contributions from the System and the System shall
close the account. Id. § 842.108(a). A person terminates membership in the System by withdrawing
"all of the person's contributions while absent from service." Id. § 842.109(a)(3). Schaefer, who
was no longer employed by a participating subdivision in the Texas County and District Retirement
System, withdrew all of his contributions. Schaefer then terminated his membership, and the System
lawfully closed his account. See id. § 842.108(a). According to Schaefer's interpretation, an
employee in another retirement system could never withdraw contributions from the System after
leaving the employment of a participating subdivision until he left the employment of all the
retirement systems. The administrative law judge appropriately decided that the legislature "did not
take away employees' statutory rights to withdraw their contributions, and force them to remain
within the System."


 Equitable Estoppel


 Schaefer asserts that (1) he relied on the System to comply with its statutory duty to
accurately inform him of the Proportionate Retirement Program and his rights under that program; (10)
(2) the System failed to comply with that statutory duty; and therefore, (3) the System is equitably
estopped from denying him the right to reinstate his membership. The administrative law judge
ruled that none of the information provided to Schaefer was misleading or in violation of the
System's statutory obligations. He also held that equity did not preclude the System from denying
Schaefer reinstatement of his membership.


 A. Standard of Review

 The administrative law judge's determination that the System complied with its
statutory obligations is entitled to serious consideration, as long as its construction of those
obligations is reasonable and does not contradict the plain language of the statute. See Steering
Comms., 2001 Tex. App. LEXIS 1700, at *7. We review the administrative law judge's conclusion
that Schaefer failed to prove the elements of equitable estoppel to determine whether that conclusion
is supported by substantial evidence. See Tex. Gov't Code Ann. § 845.506 (West Supp. 2001)
(ordering substantial evidence review for Texas County and District Retirement System decisions
"denying or limiting membership, service credit, eligibility for or the amount of benefits payable by
the retirement system"); see also Weslaco Fed'n of Teachers v. Tex. Educ. Agency, 27 S.W.3d 258,
266 (Tex. App.--Austin 2000, no pet.) (applying substantial evidence review to agency decision on
equitable estoppel). We described the well-established application of substantial-evidence review
in Gene Hamon Ford: (1) this Court presumes that the Board's order is supported by substantial
evidence, and Schaefer, as the appealing party, has the burden of overcoming this presumption; (2)
the evidence in the record may preponderate against the decision of the agency and nevertheless
amount to substantial evidence; (3) the true test is not whether the agency reached the correct
conclusion but whether some reasonable basis exists in the record for the agency's action; and (4)
we will sustain the agency's order if the evidence is such that reasonable minds could have reached
the conclusion the agency must have reached in order to justify its action. Gene Hamon Ford, 997
S.W.2d at 306.


 B. Compliance with Statutory Obligations

 After Schaefer had terminated his employment with Bexar County, he continued to
receive annual statements from the System. These statements reflected his accumulated deposits and
his total service credit with the System. He received similar statements from the Employees
Retirement System. Schaefer argues that although he received these statements, they did not reflect
his total service credit for service earned in both systems, and they did not inform him about the
existence or extent of his rights under the Proportionate Retirement Program. He claims that the
System's statements for the years 1986 through 1988 and the form letter accompanying his refund
check misinformed him that he could not retire until age sixty. Schaefer states that he mistakenly
withdrew his funds based on these misrepresentations.

 The statements informed Schaefer that he had sixteen years and two months of service
credit and that he could retire at age sixty. Schaefer asserts that both the annual statements from the
System and the letter accompanying his refund check were misleading because they also should have
informed him that he had a total of twenty-two years and ten months of service credit under the
Proportionate Retirement Program. Schaefer bases this conclusion on his reading of section 802.106
of the Proportionate Retirement Program Act. (11) See Tex. Gov't Code Ann. § 802.106 (West 1994). 
Section 802.106(c) states: 


A public retirement system annually shall provide to each active member a statement
of the amounts of the member's accumulated contributions and total accumulated
service credit on which benefits may be based and to each annuitant a statement of
the amount of payments made to the annuitant during the preceding 12 months.



Id. § 802.106(c). The administrative law judge ruled that the System complied with its duties under
this section because the information it provided to Schaefer was correct about the age at which he
would be able to retire from that System's retirement program. The administrative law judge made
a finding of fact that the System provided general information about the Proportionate Retirement
Program to employees through newsletters and in a 1979 handbook. Schaefer acknowledged that
he knew these booklets were available. (12)

 The information supplied to Schaefer was accurate because at the time the statements
were sent, Schaefer was not allowed to combine service credit under the Proportionate Retirement
Program Act. "Combined service credit" is defined as:


(1) . . . the total of a person's service credit in only those retirement systems to
which this chapter applies for which the total satisfies the length-of-service
requirements for service retirement at the person's attained age, and does not
include:



 
 any service credit in a retirement system for which the total of a person's
service credit does not satisfy the length-of-service requirements for service
retirement at the person's attained age . . . .


 


Id. § 803.001(1)(A). The Proportionate Retirement Program Act also subjects retirement system
members to the laws of each system in calculating length-of-service requirements. Id. § 803.201(a)
(West 1994).

 According to the terms of the provisions above, if Schaefer's total service credit of
twenty-two years and ten months in 1988 had been earned with the Texas County and District
Retirement System alone, he would have been able to retire from the System at age fifty-eight. (13) 
Approximately six of his total years of service credit, however, were earned with the Employees
Retirement System. At the time Schaefer withdrew his deposits, he was not eligible to retire from
the Employees Retirement System before age sixty. See Act of May 25, 1997, 75th Leg., R.S., ch.
1048, § 12, 1997 Tex. Gen. Laws 3986, 3989 (Tex. Gov't Code Ann. § 814.104, since amended). 
He did not satisfy the Employees Retirement System's length-of-service requirements and could not,
therefore, use that credit as "combined service credit" for retiring from the Texas County and District
Retirement System before age sixty. See Tex. Gov't Code Ann. § 803.001(1)(A). For these reasons,
the annual statements and the refund letter were accurate at all times. The System did not, therefore,
violate its statutory obligations to Schaefer. (14)


 C. Equitable Estoppel

 Even if we believed that the System had somehow failed to comply with its statutory
obligations to Schaefer, the System is not equitably estopped from denying Schaefer restoration of
his membership because Schaefer does not meet the elements of equitable estoppel. To prove
equitable estoppel, the asserting party must prove (1) a false representation or concealment of
material facts (2) made with knowledge, actual or constructive, of those facts (3) with the intention
that it should be acted on (4) to a party without knowledge, or the means of knowledge of those facts,
(5) who detrimentally relied upon the misrepresentation. Schroeder v. Tex. Iron Works, Inc., 813
S.W.2d 483, 489 (Tex. 1991) (citing Gulbenkian v. Penn, 252 S.W.2d 929, 932 (Tex. 1952)). The
failure to prove any one of these elements is fatal to the claim. Barfield v. Howard M. Smith Co. of
Amarillo, 426 S.W.2d 834, 838 (Tex. 1968) (citing Concord Oil Co. v. Alco Oil & Gas Corp., 387
S.W.2d 635, 639 (Tex. 1965)). "Where the real facts were known to a person or were open for his
convenient ascertainment, he was not justified in relying on representation [sic] pertaining thereto
and he cannot effectively say that he was misled or deceived by such representations." Id. (citation
omitted).

 There is substantial evidence in the record that shows Schaefer had either the
knowledge or the means of acquiring the knowledge of the facts pertinent to the termination of his
membership. The System's handbook was introduced into evidence only for the purpose of showing
its contents, and not for the purpose of proving that Schaefer had received a copy. Nevertheless,
Schaefer testified that he knew the handbook was available and that he had seen it prior to the
hearing. There was no evidence presented that Schaefer tried to obtain or read a copy of the
handbook. Further, the letter Schaefer received when he withdrew his funds advised him that he
should call the System if he had any questions about his benefits. When Schaefer withdrew his
accumulated funds, he withdrew a little over $33,000. He then failed to call the System despite the
large sum he was withdrawing and despite the invitation in the System's refund letter for Schaefer
to call with questions. The System neither made false representations nor concealed the operation
of the Proportionate Retirement Program Act from Schaefer in any way. Schaefer could not,
therefore, prove equitable estoppel, and we affirm the Board's determination that he is not equitably
entitled to restoration of his membership in the System.


CONCLUSION

 The System lawfully terminated Schaefer's membership in the System and complied
with its statutory duty to inform Schaefer about the Proportionate Retirement Program. The System
is not equitably estopped from denying Schaefer reinstatement of his membership. We, therefore,
affirm the trial court's judgment upholding the Board's final decision and order.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: May 31, 2001

Do Not Publish

1. Unless otherwise noted, the Texas County and District Retirement System will be referred to
by that name or as the "System." The System Board of Trustees will be referred to as the "Board"
unless otherwise noted.
2. "'Service credit' means service that is in a person's account in a[n applicable] retirement
system . . . that may be used to meet length-of-service requirements in that system." Tex. Gov't
Code Ann. § 803.001 (West 1994).
3. In July 1969, Schaefer terminated his employment with the County and his membership in the
System. Schaefer returned to work at the County shortly thereafter, however, and he again became
a member of the System effective March 1, 1971. In December 1984, pursuant to Bexar County
policy, Schaefer "bought back" the service credit that he had earned prior to terminating his
employment in 1969.
4. Section 844.210 was amended in 1999 and the amendment became effective December 31,
1999, after Schaefer's hearing. See Act of May 26, 1999, 76th Leg., R.S., ch. 427, § 32, 1999 Tex.
Gen. Laws 2765, 2778 (codified at Tex. Gov't Code Ann. § 844.210 (West Supp. 2001)).
5. The letter was not an outright denial. It contained information about the operation of the Texas
County and District Retirement System and the Proportionate Retirement Program suggesting that
because Schaefer was no longer a member of the System, he could not buy back into the System. 
Schaefer treated the letter as a denial in his subsequent requests and appeals. 
6. Tex. Gov't Code Ann. §§ 803.001-.403 (West 1994 & Supp. 2001).
7. Terry Horton, Executive Director of the System, testified that the System is not an agency of
the State of Texas per se. Rather, it is a legislative trust. This does not, however, alter the level of
deference we afford the System's ruling, which we treat as "a decision in a contested case as defined
by the administrative procedure law." See id. § 845.506 (West Supp. 2001).
8. Sections 842.108 and 842.109 were amended in 1999. Act of May 26, 1999, 76th Leg., R.S.,
ch. 427, §§ 8, 9, 1999 Tex. Gen. Laws 2765, 2769-70 (codified at Tex. Gov't Code Ann. §§ 842.108,
.109 (West Supp. 2001)). The amendments did not change how the statutes substantively apply to
Schaefer; thus, for ease of reference we refer to the current version of the statute.
9. Section 803.003 was amended in 1999 but this language did not change. Act of May 22, 1999,
76th Leg., R.S., ch. 1296, § 2, 1999 Tex. Gen. Laws 4439, 4439-40 (codified at Tex. Gov't Code
Ann. § 803.003(a) (West Supp. 2001)).
10. The administrative law judge found that Schaefer relied exclusively on the annual statements
and refund letter provided to Schaefer in deciding to withdraw his deposits.
11. In his initial application for reinstatement, Schaefer relied upon three separate sections of the
Proportionate Retirement Program Act for his assertions: sections 802.106, 803.401, and 803.402. 
See Tex. Gov't Code Ann. §§ 802.106, 803.401 (West 1994) & § 803.402 (West Supp. 2001). 
Section 802.106 is discussed above. The administrative law judge held that the System did not
violate sections 803.401 and 803.402. Schaefer does not address either of these sections on appeal. 
Our discussion is therefore confined to section 802.106.
12. Schaefer testified that he did not recall whether he personally received a copy. He stated,
nonetheless, "I knew there were handbooks out there that dealt with benefits--the insurance benefits
and that type of stuff."
13. Once Schaefer was fifty-eight years old and had twenty-two years of service credit, he would
meet the Rule of 80. See id. § 844.210(c)(2) (West 1994).
14. Schaefer also alleges that the System violated section 802.106(a), (b), and (g). See id.
§ 802.106(a), (b), (g). Subsection (a) requires the System to provide certain information to a person
when he or she becomes a member of the System. Id. § 802.106(a). This subsection was not enacted
until 1981, approximately twelve years after Schaefer became a member of the System in 1969, so
he could not have been a new member entitled to this information. See Act of April 16, 1981, 67th
Leg., R.S., ch. 88, § 2A, 1981 Tex. Gen. Laws 190, 190-91 (Tex. Rev. Civ. Stat. Ann. art. 6228n,
§ 2A, since repealed and codified at Tex. Gov't Code Ann. § 802.106(a)). Subsection (b) requires
the System to provide members with information on significant changes in statutes that would affect
"contributions, benefits, or eligibility." Tex. Gov't Code Ann. § 802.106(b). This duty was also not
imposed on the System until 1981, four years after the Proportionate Retirement Program Act was
passed. The Proportionate Retirement Program, then, was not a change requiring notice to members
because it already existed. Nonetheless, in 1979, the System distributed a summary of the
Proportionate Retirement Program Act to its members. Finally, subsection (g) requires retirement
systems to provide information "to the greatest extent practicable in terms understandable to a typical
member of the retirement system." Id. § 802.106(g). The administrative law judge acknowledged
that the System's "statements and . . . form letter could provide more and better information," but
held that the statements were accurate and within the requirements of the law. We hold that this
result is reasonable and overrule this point of error. See Steering Comms. for the Cities Served by
TXU Elec. & Cent. Power & Light Co. v. Public Util. Comm'n, No. 03-00-00469-CV, 2001 Tex.
App. LEXIS 1700, at *7 (Austin March 15, 2001, no pet.).


 32, 1999 Tex.
Gen. Laws 2765, 2778 (codified at Tex. Gov't Code Ann. § 844.210 (West Supp. 2001)).
5. The letter was not an outright denial. It contained information about the operation of the Texas
County and District Retirement System and the Proportionate Retirement Program suggesting that
because Schaefer was no longer a member of the System, he could not buy back into the System. 
Schaefer treated the letter as a denial in his subsequent requests and appeals. 
6. Tex. Gov't Code Ann. §§ 803.001-.403 (West 1994 & Supp. 2001).
7. Terry Horton, Executive Director of the System, testified that the System is not an agency of
the State of Texas per se. Rather, it is a legislative trust. This does not, however, alter the level of
deference we afford the System's ruling, which we treat as "a decision in a contested case as defined
by the administrative procedure law." See id. § 845.506 (West Supp. 2001).
8. Sections 842.108 and 842.109 were amended in 1999. Act of May 26, 1999, 76th Leg., R.S.,
ch. 427, §§ 8, 9, 1999 Tex. Gen. Laws 2765, 2769-70 (codified at Tex. Gov't Code Ann. §§ 842.108,
.109 (West Supp. 2001)). The amendments did not change how the statutes substantively apply to
Schaefer; thus, for ease of reference we refer to the current version of the statute.
9. Section 803.003 was amended in 1999 but this language did not change. Act of May 22, 1999,
76th Leg., R.S., ch. 1296, § 2, 1999 Tex. Gen. Laws 4439, 4439-40 (codified at Tex. Gov't Code
Ann. § 803.003(a) (West Supp. 2001)).
10. The administrative law judge found that Schaefer relied exclusively on the annual statements
and refund letter provided to Schaefer in deciding to withdraw his deposits.
11. In his initial application for reinstatement, Schaefer relied upon three separate sections of the
Proportionate Retirement Program Act for his assertions: sections 802.106, 803.401, and 803.402. 
See Tex. Gov't Code Ann. §§ 802.106, 803.401 (West 1994) & § 803.402 (West Supp. 2001). 
Section 802.106 is discussed above. The administrative law judge held that the System did not
violate sections 803.401 and 803.402. Schaefer does not address either of these sections on appeal. 
Our discussion is therefore confined to section 802.106.
12. Schaefer testified that he did not recall whether he personally received a copy. He stated,
nonetheless, "I knew there were handbooks out there that dealt with benefits--the insurance benefits
and that type of stuff."
13. Once Schaefer was fifty-eight years old and had twenty-two years of service credit, he would
meet the Rule of 80. See id. § 844.210(c)(2) (West 1994).
14. Schaefer also alleges that the System violated section 802.106(a), (b), and (g). See id.
§ 802.106(a), (b), (g). Subsection (a) requires the System to provide certain information to a person
when he or she becomes a member of the System. Id. § 802.106(a). This subsection was not enacted
until 1981, approximately twelve years after Schaefer became a member of the System in 1969, so
he could not have been a new member entitled to this information. See Act of April 16, 1981, 67th
Leg., R.S., ch. 88, § 2A, 1981 Tex. Gen. Laws 190, 190-91 (Tex. Rev. Civ. Stat. Ann. art. 6228n,
§ 2A, since repealed and codified at Tex. Gov't Code Ann. § 802.106(a)). Subsection (b) requires
the System to provide members with information on significant changes in statutes that would affect
"contributions, benefits, or eligibility." Tex. Gov't Code Ann. § 802.106(b). This duty was also not
imposed on the System until 1981, four years after the Proportionate Retirement Program Act was
passed. The Proportionate Retirement Program, then, was not a change requiring notice to members
because it already existed. Nonetheless, in 1979, the System distributed a summary of the
Proportionate Retirement Program Act to its members. Finally, subsection (g) req