PD-1673-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/2/2015 3:18:05 PM
Accepted 2/4/2015 10:55:20 AM
ABEL ACOSTA
CLERK

PD-1673-14

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

JOSE MANUEL BARRIOS, Petitioner/Appellant
v.
THE STATE OF TEXAS, Respondent/Appellee

---

PETITION FOR DISCRETIONARY REVIEW
BY PETITIONER/APPELLANT

---

ON APPEAL FROM THE SEVENTH COURT OF APPEALS' JUDGMENT
AND OPINION IN CAUSE NO. 07-13-00426-CR

TRIAL COURT CAUSE NO. 2,798
IN THE 287TH DISTRICT COURT
BAILEY COUNTY, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

February 4, 2015

ABEL ACOSTA, CLERK

February 2, 2015

**JULIE GOEN PANGER**
Counsel for Petitioner/Appellant
The Kiechler Law Firm
619 Broadway Street
Lubbock, Texas 79401
Telephone: (806) 712-2889
Facsimile: (808) 712-2529
State Bar Number: 24069793
Email: julie@thelubbocklawyer.com

# IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**HON. GORDON H. GREEN** .................................................................... Trial Court Judge
287th District Court
Bailey County, Texas

**JOSE MANUEL BARRIOS** ................................................................. Petitioner/Appellant

JUSTIN KIECHLER, JULIE GOEN PANGER. .............................. Trial Counsel for Petitioner
Kiechler Law Firm, PLLC
619 Broadway Street
Lubbock, Texas  79401

JULIE GOEN PANGER ........................................................ Appellate Counsel for Petitioner
The Kiechler Law Firm, PLLC
619 Broadway Street
Lubbock, Texas  79401

**THE STATE OF TEXAS** .................................................................... Respondent/Appellee

KATHRYN GURLEY ...................................... Trial and Appellate Counsel for Respondent
Bailey County District Attorney
701 Main Street
Post Office Box 729
Friona, Texas  79035

# TABLE OF CONTENTS

Identity of Parties and Counsel..................................................................................i

Index of Authorities...............................................................................................iii

Statement Regarding Oral Argument................................................................... iv

Statement of the Case ............................................................................................ iv

Statement of Procedural History ........................................................................ iv

Grounds for Review................................................................................................ v

Argument................................................................................................................. 1

> **Issue One:** The Court of Appeals erred in affirming the trial court's decision that a non-attorney may issue a search warrant for a blood specimen, because the language of Texas Code of Criminal Procedure art. 18.01(j) limits the authority of a magistrate who may issue a search warrant for a blood specimen to an attorney who is licensed by the state of Texas. 2 R.R. 94-106; Op. at 14-20.

Prayer ..................................................................................................................... 11

Certificate of Service ........................................................................................... 12

Certificate of Compliance.................................................................................... 13

Court of Appeals' Opinion and Judgment......................................... Appendix A

# INDEX OF AUTHORITIES

**CASES**

*Badgett v. State,*
   42 S.W.3d 136 (Tex.Crim.App.2001) ................................................................ 4, 5, 8

*Boykin v. State,*
   818 S.W.2d 782 (Tex.Crim.App.1991) ...................................................................... 4

*Ex parte Johnson,*
   273 S.W.3d 340 (Tex.Crim.App.2008) ..................................................................... 4

*In re Clark,*
   977 S.W.2d 152 (Tex.App.—Houston [14th Dist.] 1998) .......................................... 9

*Muniz v. State,*
   264 S.W.3d 392 (Tex.App.--Houston [1st Dist.] 2008, no pet.) ............................... 7

*Sanchez v. State,*
   365 S.W.3d 681 (Tex.Crim.App. 2012) ................................................................... 10

*Schmerber v. California,*
   384 U.S. 757 (1966) ................................................................................................ 10

*Steering Comms. v. Pub. Util. Comm'n,*
   42 S.W.3d 296 (Tex.App.—Austin 2001, no pet.) .................................................... 9

**CONSTITUTIONAL AND STATUTORY PROVISIONS**

U.S. Const. amend. IV ...................................................................................................... 1, 10

U.S. Const. amend. XIV ........................................................................................................ 1

Tex. Const. Art. 1, § 9 ........................................................................................................ 1, 2

Tex. Code Crim. Pro. art. 2.09 ........................................................................................ 2, 5, 11

Tex. Code Crim. Pro. art. 18.01 ....................................................................................... *passim*

Tex. Code Crim. Pro. art. 18.02 .................................................................................... 2, 3, 5, 6

Tex. Gov't Code § 311 ....................................................................................................... 4, 5

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner Barrios requests that oral argument be granted, because it will assist the Court in resolving the grounds presented for review.

## STATEMENT OF THE CASE

This case concerns whether a search warrant for a blood specimen must be issued by an attorney licensed by the state of Texas pursuant to article 18.01(j) of the Texas Code of Criminal Procedure.

At a pretrial suppression hearing, the trial court denied Barrios' motion to suppress his warrantless arrest and the search warrant for his blood specimen. As a result of the trial court's ruling, Barrios entered a plea of guilty to driving while intoxicated, 3rd or more, and he was sentenced to a term of twelve (12) years confinement in prison. Barrios timely gave notice of appeal.

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

The Seventh Court of Appeals in Amarillo, Texas, affirmed the trial court judgment in an Opinion dated December 2, 2014. Barrios did not file a motion for rehearing.

## GROUNDS FOR REVIEW

1. The Court of Appeals erred in affirming the trial court's decision that a non-attorney may issue a search warrant for a blood specimen, because the language of Texas Code of Criminal Procedure article 18.01(j) limits the authority of a magistrate who may issue a search warrant for a blood specimen to an attorney who is licensed by the State of Texas. 2 R.R. 94-106; Op. at 14-20.

PD-1673-14

IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## JOSE MANUEL BARRIOS V. THE STATE OF TEXAS

ON APPEAL FROM CAUSE NO. 07-13-00426-CR
TRIAL COURT CAUSE NO. 2,798
IN THE 287TH JUDICIAL DISTRICT COURT
BAILEY COUNTY, TEXAS

## PETITION FOR DISCRETIONARY REVIEW
## BY PETITIONER/APPELLANT

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

Petitioner, Jose Manuel Barrios, by and through his attorney on appeal, files this Petition for Discretionary Review. In support of his request for review, Petitioner would respectfully show the Court the following:

### ARGUMENT

**Issue One: The Court of Appeals erred in affirming the trial court's decision that a non-attorney may issue a search warrant for a blood specimen, because the language of Texas Code of Criminal Procedure art. 18.01(j) limits the authority of a magistrate who may issue a search warrant for a blood specimen to an attorney who is licensed by the state of Texas. 2 R.R. 94-106; Op. at 14-20.**

<u>Reason for Granting Review</u>

The Court of Appeals has misconstrued article 18.01(j) of the Texas Code of Criminal Procedure in such a way that caused a violation of Barrios' rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article 1,

§ 9 of the Texas Constitution. Specifically, the court of appeals held that a non-attorney magistrate can issue blood warrants, which does not comport with the language of article 18.01(j) of the Texas Code of Criminal Procedure.

Magistrates

Article 2.09 of the Texas Code of Criminal Procedure defines a magistrate and includes, but is not limited to "judges of the District Court" and "justices of the peace." TEX. CODE CRIM. PRO. art. 2.09. It is undisputed that the justice of the peace who issued the blood warrant for Barrios is a magistrate for purposes of the Texas Code of Criminal Procedure. *See* Op. at 14.

Who May Issue a Blood Warrant

Whereas search warrants may be issued for certain items by any magistrate, article 18.01(c) limits the persons who may issue warrants under article 18.02(a)(10), which includes blood warrants.[1] TEX. CODE CRIM. PRO. art. 18.01(c). Specifically,

> Except as provided by Subsections (d), (i), and (j), only a judge of a municipal court of record or a county court who is an attorney licensed by the State of Texas, a statutory county court judge, *a district court judge*, a judge of the Court of Criminal Appeals, including the presiding judge, or a justice of the Supreme Court of Texas, including the chief justice, or a magistrate with jurisdiction over criminal cases serving a district court may issue warrants under Article 18.02(a)(10).

---

[1] Article 18.02(a)(10) states that "[a] search warrant may be issued to search for and seize: (10) property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense . . ." TEX. CODE CRIM. PRO. art. 18.02(a)(10).

TEX. CODE CRIM. PRO. art. 18.01(c)(emphasis added).[2] The importance the legislature placed on the issuing magistrate of a blood warrant being an attorney licensed by the state is patently obvious.

The exception enumerated by the Texas Legislature in article 18.01(i) states:

> In a county that does not have a judge of a municipal court of record who is an attorney licensed by the state, a county court judge who is an attorney licensed by the state, or a statutory county court judge, any magistrate may issue a search warrant under Subdivision (10) or Subdivision (12) of Article 18.02 of this code. This subsection is not applicable to a subsequent search warrant under Subdivision (10) of Article 18.02 of this code.

TEX. CODE CRIM. PRO. art. 18.01(i). Yet again, the legislature placed clear importance on magistrates who issue blood warrants being attorneys licensed by the state. Bailey County, Texas has a district court judge who is an attorney licensed by the state – the Honorable Gordon H. Green of the 287th District Court in Muleshoe, Texas.

In 2009, the Texas Legislature added the exception enumerated in 18.01(j) of the Texas Code of Criminal Procedure, which states that:

> Any magistrate *who is an attorney licensed by this state* may issue a search warrant under Article 18.02(a)(10) to collect a blood specimen from a person who:
>
> > (1) is arrested for . . . [a DWI offense]; and
> > (2) refuses to submit to a breath or blood alcohol test.

---

[2] Bailey County, Texas has a district court judge, the Honorable Gordon H. Green, who presides over the 287th District Court, located in Muleshoe, Texas.

TEX. CODE CRIM. PROC. art. 18.01(j). In this third instance, it is clear that the legislature considers a magistrate who is an attorney licensed by the state to be the significant factor in the issuance of blood warrants.

The Court of Appeals incorrectly applied the canons of statutory construction, which, combined with the intrusiveness of blood warrants, indicate that the issuer of a warrant for a blood specimen must be an attorney licensed by the state of Texas.

Statutory Construction

*The Plain and Ordinary Meaning of Subsection 18.01(j) Dictates that a Blood Warrant May Only be Issued By a Magistrate Who Is An Attorney Licensed By the State of Texas.*

In construing a statute, a court looks to the literal text of the statute for meaning, and ordinarily gives effect to that plain meaning, unless application of the statute's plain language would lead to absurd results that the legislature could not possibly have intended, or if the text is ambiguous. *See, e.g., Badgett v. State*, 42 S.W.3d 136, 138 (Tex.Crim.App. 2001); *Ex parte Johnson*, 273 S.W.3d 340, 342 (Tex.Crim.App. 2008)(per curiam); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). The court interprets words and phrases in context and construes them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005) (governing principles of construction of words and phrases under "Code Construction Act"). Additionally, courts construe statutes, if at all possible, so that no part is void or redundant, because it is presumed that the legislature intended the

entire statute to be effective. *E.g.*, *Badgett*, 42 S.W.3d at 139 (citing TEX. GOV'T CODE § 311.021(2)).

Starting with the text of article 18.01(j), the plain and ordinary meaning of the words of the statute dictate that a blood warrant is only valid if issued by a magistrate who is an attorney licensed by the state of Texas. Article 18.01(j) permits "*any magistrate who is an attorney licensed by this state*" to issue a blood warrant pursuant to article 18.02(a)(10) from a person who has been arrested for a DWI-related offense and refuses to submit to a breath or blood alcohol test. *See* TEX. CODE CRIM. PROC. 18.01(j)(emphasis added). As set forth above, a justice of the peace qualifies as a magistrate. TEX. CODE CRIM. PROC. Art. 2.09. However, not every magistrate is an attorney licensed by the state of Texas. *See id.* In this case, the justice of the peace who issued the blood warrant for Barrios is not licensed as an attorney by the state. *See* 4 R.R. Ex. 4; *see also* C.R. 93-95.

The plain text of article 18.01, read in its entirety, also indicates that the plain and ordinary meaning of 18.01(j) requires that a blood warrant be issued by a magistrate who is an attorney licensed by the state of Texas. Article 18.01(c) provides the general rule for issuing non-blood search warrants, and the *exceptions* to those general requirements. Subsection (c) states,

> *E]xcept* as provided by Subsections (d), (i), and (j), only a judge of a municipal court of record or a county court who is an attorney licensed by the State of Texas, a statutory county court judge, a district court judge, a judge of the

> Court of Criminal Appeals, including the presiding judge,
> or a justice of the Supreme Court of Texas, including the
> chief justice, or a magistrate with jurisdiction over criminal
> cases serving a district court may issue warrants under
> Article 18.02(a)(10).

TEX. CODE CRIM. PROC. art. 18.01(c). Thus, the plain language of subsection (c) indicates that (d), (i), and (j), each provide a separate rule concerning who may issue a valid search warrant pursuant to 18.02(10). It does not state anywhere in section (c) that sections (d), (i), and (j) are related to each other or apply to each other. Nor do any of the three subsections (d, i, j) refer to one another.

If the legislature meant for section (i) to apply as an exception to section (j), it could have indicated that intent. In article 18.01(h) the legislature specifically provides,

> "*Except as provided by subsection (i) of this article*, a warrant
> under Subdivision (12), Article 18.02 of this code may only
> be issued by:
>
> 1) a judge of a municipal court of record who is an attorney
> licensed by the state;
>
> 2) a judge of a county court who is an attorney licensed by
> the state; or
>
> 3) a judge of a statutory county court, district court, the
> court of criminal appeals, or the supreme court.

TEX. CODE CRIM. PROC. art. 18.01(h). Because the Texas legislature demonstrated that if it intended subsection (i) to apply to a separate subsection, it would specifically so provide, the fact that the legislature did not so provide in subsection (j) is significant. Not only did the legislature choose not to link subsection (j) to subsection

(i) in any way — as it did in subsection (h) — the legislature specifically indicated in subsection (c) that subsections (i) and (j) are to be read separately. (The legislature amended section (c) during the same session that it added section (j)). Accordingly, it would be a strained interpretation of the plain text of the section 18.01(j), and article 18.01 as a whole, to apply the exception of subsection (i) to subsection (j).

The canons of statutory construction require that a statute be given its plain and ordinary meaning. The plain and ordinary meaning of 18.01(j) and article 18.01 as a whole dictate that only a magistrate who is an attorney licensed by the state of Texas may issue a valid blood warrant. Therefore, the blood warrant issued for Barrios was invalid because the justice of the peace who issued the warrant is not an attorney licensed by the state of Texas.

*The Plain and Ordinary Meaning of Subsection 18.01(j) Is Not Ambiguous, Nor Does It Lead to Absurd Results that the Legislature Could Not Possibly Have Intended.*

"If the plain language of a statute would lead to absurd results, or if the language is not plain, but rather ambiguous, then and only then, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extra-textual factors as executive or administrative interpretations of the statute or legislative history." *Muniz v. State*, 264 S.W.3d 392 (Tex. App—Houston [1st Dist.] 2008 no pet.).

As it relates to article 18.01(j), the Texas legislature spoke unambiguously:

> Any magistrate *who is an attorney licensed by this state* may issue a search warrant under Article 18.02(10) to collect a blood specimen from a person who:
>
> (1) is arrested for…[a DWI offense] and
>
> (2) refuses to submit to a breath or blood alcohol test.

TEX. CODE CRIM. PROC. art. 18.01(j). Article 18.01(j) does not lead to "absurd results that the legislature could not possibly have intended." *See, e.g.*, *Badgett*, 42 S.W.3d at 138. Rather, it is beyond dispute that the legislature intended just what it wrote: a blood warrant may only be issued by a magistrate who is licensed by the state. And, this is exactly what the plain language of article 18.01(j) requires.

The counterargument to this, which the Court of Appeals propounded, is that subsection (j) limits the number of magistrates who can sign blood warrants in rural areas, such as Bailey County. In fact, in the Court of Appeals' opinion, it noted the intention of the legislature to "expand the number of magistrates who could sign warrants in rural areas where there were none of the magistrates listed in subsection (c) to be found. Op. at 19. This counterargument is flawed, however, because Bailey County does have a magistrate who can issue blood warrants pursuant to article 18.01(c) – the district court judge of Bailey County, who is an attorney licensed by the state. District Judge Gordon H. Green (the trial court judge in this case) qualifies as a magistrate under article 2.09 and is an attorney licensed by the state, which explicitly qualifies him as a magistrate who can issue blood warrants under article 18.01(j).

*The Presumption that Purposeful Inclusion of Certain Items in Statute Implies Purposeful Exclusion of Absent Items Dictates that a Blood Warrant May Not be Issued by a Magistrate Who is Not an Attorney.*

Generally, "the express mention or enumeration of one thing, consequence, or class is equal to the express exclusion of all others." *See In re Clark*, 977 S.W.2d 152, 156 (Tex.App.—Houston [14th Dist.] 1998)(orig. proceeding). With no mention of the fact that non-attorneys can issue blood warrants, this Court should presume that non-attorneys are expressly excluded from issuing such invasive warrants. *See id.*; *Steering Comms. v. Pub. Util. Comm'n*, 42 S.W.3d 296, 302 (Tex.App.—Austin 2001, no pet.)(applying presumption that purposeful inclusion of certain items in statute implies purposeful exclusion of absent terms under principle of statutory interpretation *inclusio unius est exclusio alterius*). Article 18.01(j) expressly excludes non-attorneys from those who are allowed to issue blood warrants.

By allowing a blood warrant to be issued by "any magistrate who is an attorney licensed by this state," the Texas legislature provided Bailey County with the ability to issue valid blood warrants; however, in this case, the arresting officer and justice of the peace proceeded under the assumption that they had authority to draw blood under a search warrant affidavit never reviewed by an attorney. Because the arresting officer and justice of the peace overlooked or misread the specific requirements of article 18.01(j) — requirements that do not lead to absurd results if their plain meaning is given effect — the warrant in this case should have been invalidated.

<u>The Blood Warrant and the United States Supreme Court</u>

The distinction between an attorney and non-attorney issuing a blood warrant is of particular import, because of the Constitutional implications that arise when a person's blood sample is extracted. The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. CONST. amend. IV. The non-consensual extraction of blood implicates privacy rights and falls within the protections of the Fourth Amendment. *See Sanchez v. State*, 365 S.W.3d 681, 684 (Tex.Crim.App. 2012). Absent abnormal circumstances, it is only by means of a valid search warrant that the Constitution is not offended by a non-consensual blood draw. *See id.* In *Schmerber v. California,* the United States Supreme Court explained that "intrusions into the human body are particularly offensive," and that "the importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great. *Schmerber*, 384 U.S. 757, 769-70 (1966).

The Supreme Court's discussion of the personal intrusiveness of the blood warrant in *Schmerber* bolsters what the plain text of article 18.01(j) already made clear: to issue a blood warrant in Texas, the magistrate must be an attorney licensed by the state of Texas. *See Schmerber*, 384 U.S. at 769-70. A plain, literal, common-sense reading of article 18.01 indicates that the Texas legislature recognized the extremely sensitive difference between regular evidentiary search warrants, and evidentiary warrants for a blood specimen, or blood warrants, which culminated in article 18.01(j).

The blood warrant issued in this case was not valid, because although the issuing justice of the peace qualifies as a magistrate under article 2.09, she is not an attorney licensed by the State of Texas; therefore, the warrant she issued for a blood specimen of Barrios was not valid. The language of article 18.01(j) is clear and unambiguous, and its application limiting the issuance of blood warrants to attorneys licensed by the state does not lead to absurd results. The Texas legislature provided specific, distinct instructions for blood warrants, as opposed to non-blood search warrants. If the legislature opted to ignore blood search warrant procedures or wanted other sections to apply to blood search warrants, it could have stated as much. Because it did not, the blood warrant in this case should have been invalidated by the trial court, and the Court of Appeals should have reversed the trial court's decision not to do so.

## PRAYER

For the reasons set forth above, Petitioner Jose Manuel Barrios requests that this Court grant his Petition for Discretionary Review and order a brief on the merits of this case to further consider reversing the judgment of the Amarillo Court of Appeals with regard to the blood warrant wrongly issued in this case.

Respectfully submitted,

_____

Julie Goen Panger
Attorney for Appellant
The Kiechler Law Firm, PLLC
619 Broadway Street
Lubbock, Texas  79401
Telephone (806) 712-2889
Facsimile (806) 712-2529
Email: julie@thelubbocklawyer.com
State Bar Number 24069793

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the following parties by electronic service on February 2, 2015:

KATHRYN GURLEY
Bailey County District Attorney
Email: kathryn@khg-law.com

_____

Julie Goen Panger

## CERTIFICATE OF COMPLIANCE

In accordance with Texas Rule of Appellate Procedure 9.4, the undersigned attorney of record certifies that the Petition for Discretionary Review contains 2,707 words, excluding those words identified as not being counted in TEX. R. APP. P. 9.4(i)(1), and was prepared on Microsoft Word 2013®.

_____
Julie Goen Panger

# Appendix A



# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00426-CR

JOSE MANUEL BARRIOS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 2798, Honorable Gordon H. Green, Presiding

December 2, 2014

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Jose Manuel Barrios, entered a plea of guilty to the offense of driving while intoxicated (DWI),[1] third or more,[2] and, pursuant to a plea agreement following a denial of his motion to suppress, was sentenced to serve 12 years confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). Appellant appeals contending that the trial court erred in overruling his motion to suppress

---

[1] See TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2014).

[2] See id. § 49.09(b)(2) (West Supp. 2014).

evidence collected as a result of a warrantless search because: 1) initially, the police officer lacked reasonable suspicion to detain him; and 2) the officer lacked probable cause to then arrest him for the offense of DWI. Further, appellant contends that the trial court erred in denying his motion to suppress the search warrant issued to obtain a blood specimen because the issuing magistrate is not an attorney licensed to practice law by the State of Texas. We will affirm the trial court's ruling.

Factual and Procedural Background

On June 8, 2013, Officer Leonardo Aviles was on duty for the Muleshoe Police Department and, as a result of a complaint made regarding appellant, went to appellant's home to investigate. Upon finding appellant at his residence, Aviles spoke to him about the complaint and observed that appellant had been drinking. As a result of his observations and appellant's admissions that he had been drinking, Aviles advised appellant that he should not be driving any more that evening.

Approximately 30 minutes after Aviles's first interaction with appellant, Aviles responded to a call from another individual, Chuck Fabela, complaining about appellant driving by his residence while yelling and making threats directed at Fabela and his family. After receiving the complaint from Fabela, Aviles drove to appellant's residence. Appellant was not at home. Aviles chose to park near appellant's residence and wait for him. Soon thereafter, Aviles observed a vehicle stop in front of Fabela's residence. According to Aviles, he observed or heard appellant honking his horn and saying something toward the Fabela residence.

2

Aviles then attempted to stop appellant, who drove around Aviles's vehicle and proceeded to his home. Aviles followed appellant to his residence and ultimately arrested him for DWI. No field sobriety tests (FSTs) were administered to appellant at the scene. Upon arrival at the Bailey County jail, appellant stated he was physically unable to perform any FSTs. Thereafter, appellant agreed to take an intoxilyzer breath test. However, when the test was administered, appellant appeared to be blocking the mouthpiece with his tongue. Based upon appellant's refusal to submit to a breath test, a search warrant affidavit to obtain a specimen of appellant's blood was prepared.

The search warrant affidavit was presented to Justice of the Peace Debra Redwine. The record reflects that Redwine is not a licensed attorney in the State of Texas. Redwine reviewed the affidavit and signed the search warrant. A blood specimen was taken from appellant.

After appellant was charged by indictment with the offense of DWI, third or more, his attorney filed a motion to suppress the evidence. Appellant sought to suppress both his initial detention and subsequent arrest, claiming that Aviles did not have reasonable suspicion to detain appellant and that, after appellant's detention, Aviles lacked probable cause to arrest him for DWI. Appellant then filed an amended motion to suppress contending that, in addition to the other matters alleged, the search warrant was invalid because the reviewing magistrate, Redwine, is not a licensed attorney. The trial court overruled the motion to suppress.

After the trial court's ruling on the suppression issues, appellant entered into a plea agreement and pleaded guilty to the offense of DWI, third or more. Pursuant to the

3

plea agreement, appellant was sentenced to 12 years confinement in the ID-TDCJ. Appellant now appeals based upon the trial court's denial of the amended motion to suppress. We will affirm the trial court's rulings.

Standard of Review

A trial court's denial of a motion to suppress is reviewed under a bifurcated review process. *See Turrubiate v. State,* 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion. *Id.* A trial court's application of the law to the facts is reviewed *de novo. Id.*

In our case, we will initially review the trial court's rulings on the questions of reasonable suspicion to detain appellant and probable cause to arrest appellant under the bifurcated standard of review. *Id.* We give almost total deference to the trial court on questions of credibility and historical fact. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *See id.* When, as here, the trial court makes explicit findings of fact, we are to determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *State v. Priddy,* 321 S.W.3d 82, 86 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *State v. Kelly,* 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006)).

As to the search warrant issue, we note that the fact that Redwine is not a licensed attorney is not contested. Accordingly, the only question before the Court is whether the trial court applied the law correctly. Thus, we review the denial of

4

appellant's motion to suppress the evidence obtained through the search warrant *de novo. See Turrubiate,* 399 S.W.3d at 150.

## Reasonable Suspicion and Probable Cause

Appellant's first issue contends that Aviles lacked reasonable suspicion to initially detain appellant. Further, if Aviles had reasonable suspicion to detain appellant, he did not develop any probable cause to believe that appellant had committed the offense of DWI.

Applicable Law

The Fourth Amendment to the United States Constitution, along with Article I, Section 9, of the Texas Constitution protects individuals from unreasonable searches and seizures. *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). Article 1.06 of the Code of Criminal Procedure provides that the people shall be secure from all unreasonable seizures or searches. TEX. CODE OF CRIM. PROC. ANN. art. 1.06 (West 2005).[3] Thus, under Texas law, searches and seizures must be reasonable.

"A law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (quoting *Hiibel v. Sixth Judicial District Court of Nev.*, 542 U.S. 177, 185, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004)). "An officer must have reasonable suspicion that some crime was, or is about to be, committed before he may make a

---

[3] Further reference to the Texas Code of Criminal Procedure will be by reference to "art. ___," or "article ____."

traffic stop." *State v. Duran*, 396 S.W.3d 563, 568 (Tex. Crim. App. 2013) (citing *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)). Thus, a traffic stop based upon a reasonable suspicion that some crime was, or is about to be, committed does not violate Texas law. *See id.* An officer's determination about reasonable suspicion must be supported by "specific and articulable facts." *See id.* at 568-69 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). In determining whether the officer had specific and articulable facts, a reviewing court uses an objective standard. *See id.* at 569. That is, considering only the information actually available to the officer at the moment of the seizure or search, would a man of reasonable caution be warranted to believe that the action taken was appropriate. *See id.*

Under article 14.01(b), "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Art. 14.01(b) (West 2005). Probable cause for a warrantless arrest under article 14.01(b), "may be based on [an officer's] prior knowledge and personal observations . . . . [A]n officer may rely on reasonably trustworthy information provided by another person in making the overall probable cause determination." *State v. Woodard*, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011) (quoting *Beverly v. State*, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990)). Thus, all of the information to support probable cause does not have to be within an officer's personal knowledge. *Id.* The ultimate question under article 14.01(b) is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense."

*Id.* (citing *Steelman v. State,* 93 S.W.3d 102, 107 (Tex. Crim. App. 2002), as quoting *Beverly*, 792 S.W.2d at 105).

Analysis

We begin our analysis with the findings of fact entered by the trial court, after hearing the testimony at the pre-trial hearing on appellant's motion and amended motion to suppress the evidence. The trial court made the following findings of fact that are relevant to our inquiry:

1. [Appellant] was arrested on or about the 8th day of June, 2013, . . . for the offense of [DWI] by Leonardo Aviles.

20. On June 8, 2013, [Aviles] was investigating allegations that [appellant] threatened Chuck Fabela, a person the officer knew had allegedly assaulted the [appellant] prior to this investigaton.

21. On June 8, 2013, [Aviles] visited the residence of the [appellant] at approximately 9:00 p.m. During the visit:

   A. the officer smelled a strong odor of alcoholic beverage on the [appellant's] breath and observed that his eyes were red;
   B. the [appellant] gave consent to search his vehicle;
   C. during the search of the vehicle, the officer saw an open can of beer in the console which was cold to the touch;
   D. the officer saw seven other cans of beer in the passenger seat; and,
   E. the officer instructed the [appellant] to not drive his vehicle.

22. About one hour later, [Aviles] observed [appellant] operating his vehicle on a public road and heard the [appellant] honk his horn at a driveway located at 403 West Boston, Muleshoe, Texas, which was not the residence of the [appellant] and which is a violation of the Texas Transportation Code as well as a breach of the peace.

23. [Aviles] attempted to stop the [appellant's] vehicle, but the [appellant] drove away and parked in his driveway. When the officer made contact with the [appellant], the [appellant] smelled of alcohol and his eyes were red. Also [Aviles] observed that only six cans of beer remained in the vehicle.

The trial court also made the following conclusion of law that is relevant to our analysis:

5.      The credibility of the affiant is sufficiently established in the affidavit for the search warrant.

The record reveals that the affiant for the search warrant to draw a specimen of appellant's blood was Aviles. Further, a review of the affidavit reveals that it recites the events that led up to and resulted in the ultimate arrest of appellant for the offense of DWI.

During the pre-trial hearing, Aviles was the only witness to provide testimony. Aviles's testimony can be characterized as somewhat contradictory and, at times, confusing. His lack of knowledge of the definitions for intoxication and admission that he did not perform any FSTs on appellant prior to arresting him for DWI can be seen as problematic. However, the findings of fact filed by the trial court are supported by the record. *See Priddy,* 321 S.W.3d at 86.

Specifically, appellant had two separate interactions with Aviles on the night in question. During the first encounter, appellant met with Aviles outside appellant's home. Aviles testified that, during this first encounter, he thought appellant appeared unstable and smelled like alcohol. Further, the record reflects that appellant admitted he had been drinking beer. While conducting a consent search related to the incident he was called about, Aviles found that appellant had seven unopened beers in his car and an eighth beer that was opened. Aviles concluded the first encounter with appellant by advising him not to be driving anymore that evening.

8

Approximately 30 minutes later, Aviles received a second call concerning appellant. The second call was from Chuck Fabela, who advised that appellant was driving by Fabela's home yelling threats to kill him and his family. In response to this report, Aviles went back to appellant's home but did not find appellant there. Aviles then pulled down the street, turned his patrol vehicle around, parked and waited. Within a matter of minutes, Aviles observed a vehicle approaching his direction. However, the vehicle stopped in front of the Fabela home. Aviles drove toward Fabela's residence where he saw a white four-door car parked in front of the driveway of the Fabela residence. Further, he observed appellant to be the sole occupant and driver. Aviles testified on direct examination that he observed and heard appellant honk his horn and shout toward the residence. According to Aviles, such an action would have been a violation of the Texas Transportation Code. Specifically, parking across the driveway violated section 545.302, and honking the horn violated section 547.501. *See* Tex. Transp. Code Ann. §§ 545.302(b)(1), 547.501(c) (West 2011).

Aviles testified that, after observing appellant's activity in front of the Fabela residence, he turned on his emergency lights and attempted to make a traffic stop. However, appellant did not stop but instead drove down the street a short distance to his residence. Aviles followed appellant and eventually confronted him in the driveway of appellant's home.

According to Aviles's testimony on direct examination, when he approached appellant in front of his home, Aviles could smell alcohol on his breath, appellant's eyes were red, and appellant had difficulty standing up straight. Prior to detaining or arresting appellant, Aviles looked into appellant's car and saw that there were only six

9

cans of beer inside. At this point in time, appellant was placed in handcuffs and arrested.

When asked why he did not have appellant perform any FSTs at the scene of the arrest, Aviles stated that appellant said he did not want to do any. After taking appellant to the jail, he was asked to perform FSTs but he refused, claiming to have a sore back and something wrong with his legs. At the jail, appellant was offered and agreed to take an intoxilyzer test. However, when the test was administered, appellant refused to properly complete the test. According to Aviles, appellant was blocking the breath tube with his tongue.

The evidence deduced at the pre-trial hearing shows that appellant was stopped for a violation of the Texas Transportation Code. Such a violation supports the arrest of appellant without a warrant. *See* TEX. TRANSP. CODE ANN. § 543.001 (West 2011). Further, the temporary detention of appellant was supported by his threatening the residents of the Fabela home. Aviles had information from Fabela that appellant had been shouting threats toward Fabela and his family. Later, Aviles observed appellant parked across Fabela's driveway mouthing something toward the residence. Based upon his prior conversation with Fabela, Aviles was warranted in detaining appellant to investigate his reasonable suspicion that appellant was committing the offenses of disorderly conduct and terroristic threat. *See* TEX. PENAL CODE ANN. §§ 22.07 (West 2011), 42.01 (West Supp. 2014). Aviles, as demonstrated in the record, had specific and articulable facts upon which to base a detention of appellant. *See Duran*, 396 S.W.3d at 568-69. The record before us clearly demonstrates support for the trial

10

court's determination that Aviles had probable cause to detain appellant.[4]  *See*

*Gutierrez v. State,* 419 S.W.3d 547, 551 (Tex. App.—San Antonio 2013, no pet.)

(holding that probable cause exists when the officer has a reasonable belief that, based

on facts and circumstances within the officer's personal knowledge, the individual

committed or will soon commit an offense.)  Here, the officer observed appellant commit

at least two traffic offenses.  This gave him the requisite reasonable suspicion to detain

him, as found by the trial court.

As to the question of probable cause to arrest appellant for the offense of DWI,

the record again supports the trial court's determination that such probable cause

existed.  Aviles had two separate opportunities to observe appellant.  On both

occasions, Aviles noted signs of intoxication, strong odor of alcohol, and red eyes.

Additionally, appellant admitted that he had been drinking beer prior to his first

encounter with Aviles.  At the time of the first encounter, Aviles noted one opened and

seven unopened beers in appellant's car.  At the second encounter, there were only six

unopened beers in appellant's vehicle.  This supports the inference that appellant

continued to drink after his initial encounter with Aviles.  Further, Aviles testified that,

prior to placing handcuffs on appellant, he noted that appellant appeared to be unsteady

on his feet.

To these observations, we add the actions of appellant.  First, appellant knew he

had already had one encounter with law enforcement after he had been drinking and

had been advised to not drive anymore that evening.  Yet, appellant ignored this

---

[4] While we agree that there was probable cause to detain appellant, we point out that all that is required for the temporary detention of one who is suspected of committing an offense is reasonable suspicion.  *See Kerwick*, 393 S.W.3d at 273.

11

warning and drove. This can be seen as a lack of appreciation of his existing circumstances and diminished judgment. Moreover, there is the commission of two offenses in the presence of an officer, one of which might be considered the more serious offense of terroristic threat. After, being observed committing these offenses, appellant ignored Aviles's emergency lights and drove around Aviles's car to return to his home. Again, this is demonstrative of a lack of judgment which can be explained by ingestion of alcohol. When the actions of appellant are reviewed objectively, in a totality of the circumstances review, we cannot say that a reasonable and prudent officer would not have come to the same conclusion that Aviles did, that is, that appellant committed the offense of DWI. *See Woodard*, 341 S.W.3d at 412.

A review of appellant's brief reveals that appellant's contentions are centered on Aviles's testimony upon cross-examination. First, Aviles was not sure about many of the legal principles involved in arresting an individual for the offense of DWI. Next, Aviles did, in fact, contradict some of the testimony that he had given on direct examination. Finally, according to appellant's theory, the lack of FSTs and the content of the recording of the scene in front of Fabela's home and at the time of appellant's arrest reveal that Aviles did not have probable cause to arrest, rather, that Aviles arrested based upon a preconceived thought that appellant was intoxicated. Whatever Aviles's subjective belief was is not the test, rather the test is an objective test based upon the totality of the circumstances. *See Maryland v. Pringle,* 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003).

Our review of the record demonstrates, to our satisfaction, that nearly all of appellant's factual contentions may be classified as credibility issues. A reviewing

12

court, such as ours, is directed to give great discretion to the trial court's determination of the historical facts. *See Valtierra*, 310 S.W.3d at 447. We are reminded that the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *See id.* Finally, the trial court, in its conclusion of law number 5, found that the affiant for the search warrant was credible. The record shows that the affiant for the search warrant was Aviles. The record also shows that the facts put forth in the search warrant affidavit mirror nearly all of the facts Aviles testified to at the pre-trial hearing. We are left with but one conclusion, the trial court found Aviles to be a credible witness and we may not, based upon this record, alter that conclusion. *See id.*

As to appellant's contention that Aviles's decision to arrest appellant was not due to the facts and circumstances observed by the officer, but rather, was a result of Aviles's preconceived determination that appellant was intoxicated, we note that this contention is entirely premised on appellant's perception of Aviles's subjective belief. However, instead of the subjective belief of the arresting officer, we must review the question of probable cause based upon an objective standard. *See Pringle,* 540 U.S. at 371.

Accordingly, the trial court did not abuse its discretion in denying appellant's motion to suppress the evidence of the initial detention and subsequent arrest of appellant for DWI. *See Turrubiate,* 399 S.W.3d at 150. Appellant's first issue is overruled.

Search Warrant

<u>Applicable Law</u>

The fact that the magistrate who issued the search warrant for appellant's blood is not a licensed attorney is undisputed. Accordingly, we are dealing with the trial court's application of the law to the facts and will review the trial court's decision *de novo. See id.* at 147. Further, we note that the ultimate issue will be controlled by our construction of article 18.01 of the Texas Code of Criminal Procedure. *See* art. 18.01 (West Supp. 2014). Statutory construction is a question of law. *State v. Vasilas,* 187 S.W.3d 486, 488 (Tex. Crim. App. 2006).

The non-consensual extraction of blood from a person implicates the privacy rights of the individual and is, therefore, protected by the Fourth Amendment to the United States Constitution. *See Schmerber v. California,* 384 U.S. 757, 768-69, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). Such protection is also recognized in the Texas Constitution. TEX. CONST. art. I, § 9; *see also Escamilla v. State,* 556 S.W.2d 796, 798 (Tex. Crim. App. 1977).

The issuance of a search warrant is governed by Chapter 18 of the Texas Code of Criminal Procedure. The issuance of an evidentiary search warrant is governed by art. 18.02(10). *See* art. 18.02(10) (West Supp. 2014); *see also Clay v. State,* 391 S.W.3d 94, 97 (Tex. Crim. App. 2013) (holding that an evidentiary search warrant may issue for the extraction of blood). Article 18.01 contains several provisions governing who may issue search warrants. *See* art. 18.01.

At issue before the Court are the provisions of article 18.01(i) and (j). The State contends that the facts of this case are controlled by subsection (i), while appellant states that the issue will be decided by application of subsection (j). Thus, we are required to construe the statute.

Article 18.01(i) provides:

(i)     In a county that does not have a judge of a municipal court of record who is an attorney licensed by the state, a county court judge who is an attorney licensed by the state, or a statutory county court judge, any magistrate may issue a search warrant under Subdivision (10) or Subdivision (12) of Article 18.02 of this code. This subsection is not applicable to a subsequent warrant under Subdivision (10) of Article 18.02 of this code.

Article 18.01(j) provides:

(j)     Any magistrate who is an attorney licensed by this state may issue a search warrant under Article 18.02(10) to collect a blood specimen from a person who:

(1) is arrested for an offense under Section 49.04 . . . Penal Code; and

(2) refuses to submit to a breath or blood alcohol test.

Parties' Contentions

The State contends that a justice of the peace is a magistrate as defined by statute. *See* art. 2.09 (West Supp. 2014). However, a justice of the peace is not one of the magistrates permitted to sign an evidentiary search warrant, *see* art. 18.02(10), pursuant to article 18.01(c). *See* art. 18.01(c). Further, Bailey County has no magistrates listed in article 18.01(c) who are licensed attorneys, other than the district judge. Therefore, according to the State's theory, the exception delineated in article

15

18.01(i) is applicable. The State contends that the plain language of the statute leads to this conclusion.

Appellant, however, contends that the plain language of the entirety of article 18.01 leads to a different conclusion. Appellant points out that the plain language of article 18.01(j) permits "[a]ny magistrate who is an attorney licensed by this state" to issue a search warrant to seize blood; however, the requirement to be a licensed attorney would exclude Justice of the Peace Redwine. Therefore, appellant contends the warrant at issue was not proper.

Analysis

The different contentions of appellant and the State require this Court to construe the statute at issue. In so doing, we are required to give effect to the literal text unless the meaning of the statute is ambiguous or the plain meaning leads to an absurd result that the legislature could not have intended. *See Chiarini v. State,* 442 S.W.3d 318, 320 (Tex. Crim. App. 2014) (citing *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991)). Further, we must seek to effectuate the intent or purposes of the legislators who enacted the legislation. *See Vasilas*, 187 S.W.3d at 488.

To properly analyze the question before the Court, we must begin with the basics. Article 2.09 provides a rather extensive list of whom, among the numerous listed officials, are considered to be magistrates. *See* art. 2.09. Search warrants may be signed by a magistrate. See art. 18.01(a). However, certain specific types of warrants, like evidentiary warrants issued pursuant to article 18.02(10), may only be

16

issued by certain specified magistrates. *See* art. 18.01(c). Yet, the same provision that limits who may issue a search warrant also contains the exceptions at issue. *See id.*

The plain language of article 18.01(i) tells us that, if a county does not have a municipal judge who is a licensed attorney, a county judge who is a licensed attorney, or a statutory county judge, then, in that situation, any magistrate may issue a search warrant under article 18.02(10). *See* art. 18.01(i). This version of article 18.01(i) was passed in 2007. *See* Act of May 15, 2007, 80th Leg., R.S., ch. 355, 2007 Tex. Gen. Laws 652. Very clearly, there can be no misunderstanding about the direction of the legislature in such a situation. The legislature was clearly trying to ease the burden on rural counties by expanding the list of magistrates who could issue article 18.02(10) search warrants. *See Muniz v. State*, 264 S.W.3d 392, 398 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (construing the prior version of article 18.01(i)). The plain language is clear and unambiguous. *See Chiarini,* 442 S.W.3d at 320.

Turning to the second provision at issue, article 18.01(j), we find that the statute says that any magistrate who is a licensed attorney may issue an article 18.01(10) search warrant to collect a specimen of blood when a citizen is accused of one of the intoxication offenses listed and has refused to give a specimen of breath or blood. *See* art. 18.01(j). This subsection of article 18.01 was passed in 2009. *See* Act of June 19, 2009, 81st Leg., R.S., ch. 1348, 2009 Tex. Gen. Laws 4262-65. When read alone, this provision clearly states that any magistrate who happens to be a licensed attorney in the State of Texas may sign a blood draw search warrant.

Appellant contends that subsection (j) acts as a limitation on subsection (i). The thrust of appellant's position is that, after granting the rural counties the opportunity to utilize their magistrates when they did not have any who qualified to sign a search warrant issued under article 18.02(10), the legislature subsequently withdrew that authority by passing subsection (j). Under appellant's theory, the **only** magistrate who may sign a search warrant for seizure of blood is a magistrate who has a law license.

To come to this conclusion, appellant must, by necessity, substitute the word "only" for the word "any." Any is the first word of this provision and, as used, is an adjective used to indicate a person or thing that is not particular or specific. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 97 (3rd ed. 1976). On the other hand, only is an adjective meaning alone in a class or category; existing with no other or others of the same kind. *See id.* at 1577. Thus, under appellant's theory, we have gone from expanding the number of magistrates available to restricting the number of magistrates available. Appellant contends that this is what the legislature had in mind when it passed subsection (j) in 2009. This is so, according to appellant, because a blood draw is such an invasive matter, as recognized by the United States Supreme Court decision in *Schmerber*. *See* Schmerber, 384 U.S. at 768-69. However, the only requirement of *Schmerber* is that the prerequisites of the Fourth Amendment to the Constitution be met prior to the collection of any blood specimen. *See id.* at 771.

As opposed to appellant's contentions, our reading of subsection (j) leads us to conclude that it is clear and not ambiguous. *See Chiarini,* 442 S.W.3d at 320. Very clearly, the statute says that any magistrate who is a licensed attorney can sign a warrant to draw a blood specimen. Further, the two provisions at issue can be

reconciled to effectuate the purpose for which they were enacted. *See Vasilas*, 187 S.W.3d at 488.

Simply put, subsection (c) of article 18.01 limits the magistrates who may sign search warrants. It is also clear that the passage of subsection (i) of article 18.01 was intended to expand the number of magistrates who could sign warrants in rural areas where there were none of the magistrates listed in subsection (c) to be found. *See Muniz*, 264 S.W.3d at 398. By passing the exception in subsection (j), it is this Court's view that the legislature was intending to expand, not contract, the number of magistrates available to sign search warrants for blood. Very consciously, the legislature used the term "any" in crafting this statute. Thus, it is apparent that the legislature wanted more magistrates available to review search warrants for blood, not less. This interpretation of the two provisions effectuates and harmonizes the statute so that all portions of the statute may be given effect. *See* TEX. GOV'T CODE ANN. § 311.021 (West 2013); *Clinton v. State,* 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (holding that to determine the collective intent of the legislature in passing legislation, we look first to the literal text).

Finally, despite the position of appellant, we do not find that such an interpretation of the statute creates an absurd result. Instead, it would be appellant's position that would create an absurd result. Under the interpretation suggested by appellant, the legislature would have to be presumed to have intended to undo the exception granted by subsection (i) to the prohibitions of subsection (c) when it passed subsection (j). Such a result is an absurd result for it violates the very basic principal

19

that we assume the legislature intended the entire statute to be effective.  *See* T<small>EX</small>. G<small>OV'T</small> C<small>ODE</small> A<small>NN</small>. § 311.021; *Clinton,* 354 S.W.3d at 800.

We therefore conclude that Redwine, acting in her capacity as a magistrate pursuant to the exception of subsection (i), properly signed and issued the search warrant for a specimen of appellant's blood.  This means that the trial court did not commit error when it overruled appellant's motion to suppress.  Accordingly, appellant's issue to the contrary is overruled.

### Conclusion

Having overruled appellant's issues, the trial court's judgment is affirmed.

Mackey K. Hancock
Justice

Publish