**STEERING COMMITTEES FOR THE CITIES SERVED BY TXU ELECTRIC and Central Power and Light Company, Appellants,**

v.

**PUBLIC UTILITY COMMISSION and TXU Energy Services Company, Appellees.**

No. 03–00–00469–CV.

Court of Appeals of Texas, Austin.

March 15, 2001.

Geoffrey M. Gray, Lloyd, Gosselink, Blevins, Rochelle, Baldwin & Townsend, P.C., Austin, for appellants.

Kristen L. Worman, Asst. Atty. Gen., Natural Resources Div., Austin, for PUC.

David C. Duggins, Clark, Thomas & Winters, Austin, for TXU.

Before Justices KIDD, B.A. SMITH and PURYEAR.

BEA ANN SMITH, Justice.

In this declaratory judgment action, Steering Committees of Cities Served by TXU Electric and Central Power and Light Company (the Cities) challenge the Public Utility Commission's implementation of the electric utilities deregulation statutes governing who may purchase electricity for resale in Rule 25.111.[1] *See* 16 Tex.Admin.Code § 25.111 (2001). The Cities complain that the Commission misinterpreted the statutes and as a result, unconstitutionally limited the powers of home-rule municipalities by prohibiting them from purchasing electricity for resale to their citizens. TXU Energy Services Company (TXU) intervened in support of the Commission's rule. We hold that the Commission reasonably interpreted the deregulation statutes in promulgating Rule

---

**1.** We note that this represents the first instance where judicial review of competitive rules has been commenced directly to this Court under Utility Code section 39.001(e), and we shall address that statute as it bears on our decision of the third point of error. *See* Tex.Util.Code Ann. § 39.001(e) (West Supp. 2001).

25.111 and we affirm the Commission's order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1999, the legislature deregulated the electric utility industry by enacting legislation to allow competitive generation of power and retail sale of electricity. Act of May 27, 1999, 76th Leg., R.S., ch. 405, §§ 1–67, 1999 Tex.Gen. Laws 2543. By January 1, 2002, each electric utility must separate its energy services business activities into the following units: a power generation company, a retail electric provider, and a transmission and distribution utility.[2] *See* Public Utility Regulatory Act (PURA), Tex.Util.Code Ann. § 39.051(b) (West Supp.2001). Participation in the retail sales market is not limited to former electric power providers and will be determined by "the normal forces of competition." *Id.* § 39.001(a).

The legislature developed certain prerequisites for participating in deregulated retail sale of electricity. Retail electric providers may sell electricity to customers only after they are certified by the Commission. *Id.* § 39.352(a). To be certified, retail electric providers must demonstrate: (1) financial and technical resources sufficient to provide continuous and reliable service, (2) managerial and technical ability to supply electricity according to customers' contracts, (3) resources that meet certain customer protection requirements, and (4) ownership or lease of an office in Texas for the purpose of providing customer service. *Id.* § 39.352(b). The Commission set out these requirements for certification in Rule 25.107. 16 Tex.Admin.Code § 25.107 (2001).

The statutory scheme distinguishes retail electric providers from aggregators, those who join electricity customers together to negotiate the purchase of electricity.[3] Tex.Util.Code Ann. § 39.353(b) (West Supp.2001) ("Retail electric providers are not aggregators."). Generally, aggregators may not purchase electricity for resale. *Id.* Aggregators need only register with the Commission to provide aggregation services.[4] *Id.* § 39.353(a). The Commission adopted Rule 25.111 to establish requirements and procedures for registering aggregators. 16 Tex.Admin.Code § 25.111. The rule imparts that municipalities may not purchase electricity for resale to their citizens. *See id.* § 25.111(d)(4)(C); *see also* 25 Tex.Reg. 6103, 6110 cmt. (2000) ("Under the statutory scheme, municipalities and political subdivisions may act as aggregators, not resellers, of electric power to private citizens.").

The Cities challenge this prohibition on their ability to resell electricity to their citizens. They bring a declaratory judgment action asking this Court to declare Rule 25.111 invalid on the basis that the Commission misinterpreted chapter 303 of

---

2. The legislature did not deregulate transmission and distribution services, which involve transportation of power, presumably to avoid duplication of the existing infrastructure. *See id.* § 39.001(a). Power generation and transmission and distribution are not at issue in this appeal.

3. The statutory scheme also provides for a municipally owned utility "owned, operated, and controlled by a municipality or by a nonprofit corporation the directors of which are appointed by one or more municipalities."

*Id.* § 11.003(11). Municipally owned utilities are governed by statutes entirely separate from those at issue here. *Id.* ch. 40. The Cities are aggregators, not municipally owned utilities.

4. Both retail electric providers and aggregators must comply with customer protection provisions, disclosure requirements, and marketing guidelines established by the statute and by the Commission. *Id.* §§ 39.352(c), .353(c).

the Local Government Code when it promulgated the rule. *See* Tex.Loc.Gov't Code Ann. §§ 303.001–.002 (West Supp. 2001). The Cities contend that the deregulation statutes permit home-rule municipalities to take title to electricity when acting as aggregators for their citizens. As further support for their challenge to the Commission's interpretation of the statutes, the Cities claim that Rule 25.111 unreasonably undermines the constitutional authority of home-rule cities without a clear legislative directive to do so. The Cities also argue that prohibiting municipalities from reselling electricity to their citizens frustrates legislative intent by constraining the development of a competitive electric power industry. The Cities appeal directly to this Court. *See* Tex.Util.Code Ann. § 39.001(e) (West Supp.2001).

## DISCUSSION

### I. Statutory Construction

Rule 25.111 sets out the types of aggregators who must register, restrictions on registered aggregators, and procedures for registration. 16 Tex.Admin.Code § 25.111. The Commission designates a municipality as a Class II aggregator, *id.* § 25.111(c)(2)(B), which may not take title to electricity for the purpose of retail sales.[5] *Id.* § 25.111(d)(4).

■■■ The Cities first contend that in promulgating Rule 25.111 the Commission unreasonably construed Utility Code sections 39.353, 39.354, and 39.3545 and Local Government Code section 303.002. Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, as long as the construction is reasonable and does not

contradict the plain language of the statute. *Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*, 997 S.W.2d 298, 305 (Tex.App.—Austin 1999, pet. denied) (citing *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex.1993)). This is particularly true when the statute involves complex subject matter. *Cf. City of Plano v. Pub. Util. Comm'n*, 953 S.W.2d 416, 421 (Tex.App.—Austin 1997, no pet.). As long as the agency's ruling is a reasonable reading of the statute, this Court will affirm if that reading is in harmony with the rest of the statute, even if other reasonable interpretations exist. *See Gene Hamon Ford*, 997 S.W.2d at 305 (citing *City of Plano*, 953 S.W.2d at 421). We do not look at individual provisions of the statute in isolation; rather, we construe the statute as a whole. *See Cent. Power & Light Co. v. Pub. Util. Comm'n*, 17 S.W.3d 780, 784–85 (Tex.App.—Austin 2000, pet. denied). In construing a statute, our objective is to determine and give effect to the legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000).

■■ The Cities assert that the Commission improperly construed Utility Code sections 39.353, 39.354, and 39.3545 by failing to recognize the legislative intent to allow public aggregators, which includes the Cities, to purchase and resell electricity, while precluding private aggregators from doing so. The Cities urge that only private aggregators are denied the right to purchase electricity under Utility Code section 39.353, while municipal and political subdivision aggregators are not similarly restricted under sections 39.354 and 39.3545.[6] These sections provide as follows:

---

5. Under Rule 25.111, the only Class II aggregator that may take title to electricity is a political subdivision aggregating for two or more political subdivisions. 16 Tex.Admin.Code § 25.111(d)(4)(B) (2001).

6. The Commission agrees that these sections distinguish private and public aggregators.

### § 39.353. Registration of Aggregators

(a) A person may not provide aggregation services in the state unless the person is registered with the commission as an aggregator.

(b) In this subchapter, "aggregator" means a *person* joining two or more customers, other than municipalities and political subdivision corporations, into a single purchasing unit to negotiate the purchase of electricity from retail electric providers. *Aggregators may not sell or take title to electricity.* Retail electric providers are not aggregators.

. . . .

### § 39.354. Registration of Municipal Aggregators

(a) A municipal aggregator may not provide aggregation services in the state unless the municipal aggregator registers with the commission.

(b) In this section, "municipal aggregator" means a person authorized by two or more municipal governing bodies to join the bodies into a single purchasing unit to negotiate the purchase of electricity from retail electric providers or aggregation by a municipality under Chapter 303, Local Government Code.

. . . .

### § 39.3545. Registration of Political Subdivision Aggregators

(a) A political subdivision aggregator may not provide aggregation services in the state unless the political subdivision aggregator registers with the commission.

(b) In this section, "political subdivision aggregator" means a person or political subdivision corporation authorized by two or more political subdivision governing bodies to join the bodies into a single purchasing unit or multiple purchasing units to negotiate the purchase of electricity from retail electric providers for the facilities of the aggregated political subdivisions or aggregation by a person or political subdivision under Chapter 303, Local Government Code.

. . . .

Tex.Util.Code Ann. §§ 39.353, .354, .3545 (West Supp.2001) (emphasis added). The Cities maintain that these sections permit public aggregators to take title to electricity.

Further, the Cities assert that Local Government Code section 303.002 allows political subdivisions to purchase electricity because that section does not expressly prohibit them from doing so. *See* Tex.Loc. Gov't Code Ann. § 303.002. That section, entitled Aggregation by Political Subdivisions for Citizens, states in relevant part:

(a) A political subdivision aggregator may negotiate for the purchase of electricity and energy services on behalf of the citizens of the political subdivision. . . .

(b) A political subdivision may contract with a third party or another aggregator to administer the aggregation of electricity and energy services purchased under Subsection (a).

*Id.* § 303.002(a), (b). The Cities conclude that because this section does not forbid the purchase of electricity by municipalities, the legislature did not preempt the power of a municipality to purchase electricity when aggregating for its citizens.

The Commission counters that the legislature clearly indicated its intent to prohibit municipalities, as aggregators, from purchasing electricity for resale to their citizens in Local Government Code chapter 303. According to the Commission, Local Government Code sections 303.001 and 303.002 add to the Utility Code's dis-

tinction between public and private aggregators by distinguishing between the purchase of electricity for use in public facilities versus use by private citizens. Section 303.001 provides:

**§ 303.001. Aggregation by Political Subdivisions**

(a) In this chapter, "political subdivision" means a ... municipality,....

(b) A political subdivision may join with another political subdivision or subdivisions to form a political subdivision corporation or corporations to act as an agent to negotiate the purchase of electricity, or to likewise aid or act on behalf of the political subdivisions for which the corporation is created, with respect to their own electricity use for their respective public facilities.

....

(d) A *political subdivision corporation may* negotiate on behalf of its incorporating political subdivisions for the purchase of electricity, make contracts for the purchase of electricity, *purchase electricity,* and take any other action necessary to purchase electricity *for use in the public facilities* of the political subdivision ... represented by the political subdivision corporation.....

*Id.* § 303.001 (emphasis added). Unlike section 303.002, which involves public subdivisions aggregating for their citizens, section 303.001 expressly permits a political subdivision corporation to purchase electricity for use in *public* facilities.[7] The

Commission contends that this second distinction demonstrates the legislative intent to allow a municipality to purchase electricity *only* for use in public facilities, but not for resale to its citizens.

■ Despite the Cities' contention that municipalities may purchase electricity because section 303.002 does not expressly prohibit them from doing so, we presume that the purposeful inclusion of certain terms in a statute implies the purposeful exclusion of terms that are absent under the principle of statutory interpretation *inclusio unius est exclusio alterius.* See *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981). The express power to purchase electricity for use in public facilities under section 303.001, therefore, cannot be read into section 303.002 governing the aggregation but not the purchase of electricity for the benefit of citizens.

■ The Commission reads section 303.001 as a narrow exception to the general rule that aggregators may not purchase electricity,[8] and we conclude this is a reasonable reading of the deregulation statutes as a whole. This position is bolstered by Utility Code section 39.353, which states that "[a]ggregators may not sell or take title to electricity. Retail electric providers are not aggregators."[9] Tex. Util.Code Ann. § 39.353(b). We hold that the Commission's interpretation of the

7. Section 303.001 corresponds with Rule 25.111(d)(4)(B), which allows political subdivision corporations aggregating for political subdivisions to take title to electricity. 16 Tex.Admin.Code § 25.111(d)(4)(B).

8. *See* 25 Tex. Reg. 6103, 6110 cmt. (2000).

9. Section 39.353 defines aggregators as persons. Tex.Util.Code Ann. § 39.353(b) (West

Supp.2001). The Cities assert that because municipalities are not "persons" under the Utility Code, *see id.* § 11.003(7), (14), these prohibitions do not apply to them. In promulgating a rule to establish registration requirements for aggregators, it was appropriate for the Commission to look to the section of the statute that generally addresses registration of aggregators for guidance.

electricity deregulation statutes reflected in Rule 25.111 is reasonable.

The Cities also argue that if a municipality cannot purchase and resell electricity to its citizens, Local Government Code section 303.002(b) is rendered meaningless. *See* Tex.Loc.Gov't Code Ann. § 303.002(b). That section allows a political subdivision to contract with a third party or another aggregator to administer aggregation on its behalf. *Id.* The Commission and TXU both refer to a number of administrative matters that arise when an entity aggregates electricity, including compiling and updating lists of the citizens represented by the municipality. We hold that section 303.002(b) is not rendered meaningless by Rule 25.111. We overrule the Cities' first point of error.

## II. Home–Rule Municipalities

### A. Preservation of Error

The Cities next assert that the Commission does not have the authority to promulgate a rule that unconstitutionally prohibits a home-rule municipality from taking title to electricity when acting as an aggregator for its citizens. TXU asserts that the Cities have not preserved this attack on the Commission's misreading of the statute. TXU points to section 39.001(e) of the Utility Code, which provides that judicial review of competition rules shall be commenced in this Court and conducted under the Administrative Procedure Act (APA), "except as otherwise provided by this chapter." Tex.Util.Code Ann. § 39.001(e) (referring to Tex.Gov't Code Ann. ch. 2001 (West 2000)). The Cities urge that under the APA, a challenge to a rule's constitutionality may be brought for the first time on appeal. *See R.R. Comm'n v. ARCO Oil & Gas Co.*, 876 S.W.2d 473, 481 (Tex.App.—Austin 1994, writ denied). TXU responds that the APA does not apply here, relying on language in section 39.001(e) that states "[j]udicial review ... shall be limited to the commission's rulemaking record." Tex. Util.Code Ann. § 39.001(e). TXU contends that the present case is distinguishable from a declaratory judgment action under the APA, which requires developing evidence before the district court. *See R.R. Comm'n v. Home Transp. Co.*, 670 S.W.2d 319, 325 (Tex.App.—Austin 1984, no writ).

■ The Cities offer a good reason for raising this argument for the first time in this Court. There was no need to present this issue at the public hearing because initial drafts of Rule 25.111 allowed municipal aggregators to purchase electricity for resale to citizens. The version of the rule that the Cities challenge on appeal, however, was submitted to the Commission for adoption *after* the public hearing. The Utility Code makes no provision for motions for reconsideration or rehearing. Unless the Cities are allowed to make the argument to this Court in this suit for judicial review, they are forever foreclosed from doing so.

The Cities argued to the Commission that it had misconstrued the deregulation statutes. The Cities' contention that the Commission is improperly limiting home-rule municipalities' powers is an extension of the Cities' argument that the Commission erroneously interpreted the statute. To address this question of law we need not undertake an evidentiary examination beyond that contained in the Commission's rulemaking record. We therefore decline to adopt TXU's position and will consider whether the Commission's interpretation of the statute is unreasonable on the ground that Rule 25.111 improperly limits the powers of a home-rule municipality.

### B. Home–Rule Municipalities

■ Article XI, section 5 of the Texas Constitution provides for home rule in

cities with populations of more than 5000. Tex. Const. art. XI, § 5 interp. commentary (West 1993). These cities may adopt or amend their own charters by a majority vote of qualified voters and they may levy and assess taxes. *Id.* art. XI, § 5. Before the Constitution was amended to provide for home-rule cities, cities owed their existence and their powers to the legislature. *Id.* interp. commentary. Now, a home-rule city has all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter. *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex.1998); *see also* Tex. Const. art. XI, § 5. The legislature may limit these powers; however, its intent to do so must appear with unmistakable clarity. *Proctor*, 972 S.W.2d at 733.

■ The Cities urge that the Commission misinterpreted the Utility and Local Government Codes, which they argue clearly permit home-rule municipalities to purchase electricity, and exceeded its authority in promulgating a rule that prohibits Cities from purchasing electricity when section 303.002 does not clearly prevent *them from taking title to electricity.* We have already held that the Commission could reasonably infer from the statute that aggregators generally are not entitled to purchase electricity, and that by granting municipalities the right to purchase electricity only for use in public facilities, the legislature created a narrow exception to the general rule. Because the distinctions found in sections 303.001 and 303.002 are clear, the Commission did not exceed its authority by adopting Rule 25.111. Because we so hold, we overrule the Cities' second point of error.

### III. Public Policy

■ The Cities contend that reading the statute to prevent municipalities from purchasing electricity frustrates the legis-lature's intent to enhance a competitive electric power industry. They assert that if municipalities may not purchase and re-sell electricity, customers served by only one retail electric provider may in reality have no other choice and this result under-mines the legislature's focus on enhancing competition. *See* Tex.Util.Code Ann. § 39.001(a) ("electric services and their prices should be determined by customer choice and the normal forces of competi-tion"); *id.* § 39.101(a) (referring to Jan. 1, 2002, as the date "customer choice" be-gins). On the other hand, the Cities main-tain that if municipalities are allowed to purchase and resell electricity to citizens, once deregulation is complete municipali-ties may provide the only competition in markets served by one retail electric pro-vider. Further, as non-profit corporations, municipalities may be able to compete more efficiently because they do not have to factor profits into their prices to cus-tomers.

■ We find the Cities' policy argu-ments persuasive; however, we do not de-termine policy. We only consider whether the Commission's interpretation is reason-able under the statute. *See Gene Hamon Ford*, 997 S.W.2d at 305. The Commis-sion's policy need not be wise or desirable; it need only reflect a legitimate position. *See Bullock v. Hewlett–Packard Co.*, 628 S.W.2d 754, 756 (Tex.1982). The Commis-sion contends that the public interest is served by its interpretation of the statute. First, it points out that the statute pre-vents conflicts of interest between retail electric providers and aggregators, who represent buyers. *See* Tex.Util.Code Ann. § 39.353(b). Second, the legislature pro-vided rigorous requirements for certifica-tion of retail electric providers, but a less rigorous registration process for aggrega-tors. Retail electric providers must dem-onstrate, for example, a certain level of

financial and technical resources to provide continuous and reliable electric service. *Id.* § 39.352(b)(1). Such requirements ensure that the stability of the power grid is not compromised.

While the Cities present a convincing argument that allowing municipalities to sell electricity to their citizens would enhance competition, the Commission's interpretation in Rule 25.111 is not clearly inconsistent with the statutory scheme. We hold that the Commission properly exercised its discretion under the statute in promulgating Rule 25.111. We overrule the Cities' third point of error.

### CONCLUSION

We hold that the Commission reasonably interpreted the electricity deregulation statutes in promulgating Rule 25.111, which prohibits home-rule municipalities from purchasing electricity to resell to their citizens. We, therefore, affirm the Commission's order adopting Rule 25.111.