ACCEPTED
03-15-00335-CV
6898529
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/11/2015 11:56:18 PM
JEFFREY D. KYLE
CLERK

# NO. 03-15-00335-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

9/11/2015 11:56:18 PM

JEFFREY D. KYLE
Clerk

IN THE THIRD COURT OF APPEALS
AUSTIN, TEXAS

HERBERT ROLNICK,

*Appellant*

v.

SIGHT'S MY LINE, INC. A FLORIDA CORPORATION; STEWART LANTZ; RIGGS, ALESHIRE & RAY; BLAZIER, CHRISTENSEN, BIGELOW & VIRR; AND ADAMS & GRAHAM,

*Respondent*

Interlocutory Appeal from the 200th Judicial District Court
in Travis County, Texas, The Honorable Tim Sulak, Presiding

## APPELLANT'S REPLY BRIEF

**Ruth G. Malinas**
Texas Bar No. 08399350
**Tim T. Griesenbeck, Jr.**
Texas Bar No. 08454450
**Scott M. Noel**
Texas Bar No. 00797158
**Plunkett & Griesenbeck, Inc.**
Catholic Life Building, Suite 900
1635 N.E. Loop 410
San Antonio, Texas 78209
(210) 734-7092 (telephone)
(210) 734-0379 (facsimile)
rmalinas@pg-law.com

ATTORNEYS FOR APPELLANT HERBERT ROLNICK

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT..................................................................1

ARGUMENT AND AUTHORITIES .........................................................2

I.   The Waiver Arguments Have No Merit.............................................2

    A.   Subsequent Controlling Authority Precludes
        Reliance on *Casino Magic Corp. v. King* or Other
        Cases Holding an Unsworn Special Appearance Is
        a General Appearance..........................................................2

    B.   Likewise, Adams' Waiver Argument Is Meritless..................9

II.  Appellees' "Minimum Contacts" Analysis Is
    Fundamentally Flawed ...................................................................10

    A.   Appellees Ignore *Walden v. Fiore*..........................................11

    B.   Only Contacts Rolnick Himself Created Count....................12

    C.   Only the Defendant's Contacts with the Forum
        State Itself Count, Not the Defendant's Contacts
        with Persons Who Reside There ..........................................16

    D.   Rolnick Did Not Purposefully Avail Himself of the
        Privilege of Conducting Activities in Texas that
        Invoked the Benefits and Protections of Texas
        Laws .................................................................................19

    E.   Appellees Cannot Rely on Any Effects in Texas of
        Rolnick's Florida Conduct or Where Rolnick
        Supposedly Directed a Tort..................................................21

III. Appellees Have No Answer for Rolnick's Cases
    Involving Nonresident Attorneys and Law Firms.........................24

IV.  SML's "Agency" Theory Is Meritless.............................................25

i

Page

<u>CASES</u>

*Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801,
806 (Tex. 2002) ...................................................................................11

*Brocail v. Anderson*,
132 S.W.3d 552 (Tex. App.—Houston [14th Dist.] 2004, pet.
denied) ...............................................................................................24

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct.
2174, 85 L. Ed.2d 528 (1985) ...................................................... 12, 17

Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 .... 21, 22

*Casino Magic Corp. v. King*, 43 S.W.3d 14, 18 (Tex. App.—
Dallas 2001, pet. denied)........................................................... 2, 3, 6, 8

*Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998).......... passim

*Exito Electronics Co., Ltd v. Trejo*, 42 S.W.3d 302 (Tex. 2004) ....... 6, 7, 8

*Guardian Royal Exch. Assur., Ltd. v. English Chinia Clays,
P.L.C.*, 815 S.W2d 223, 226 (Tex. 1991) .............................................11

*Guyton v. Pronav Ship Mgmt., Inc.*, 139 F. Supp.2d 815, 818
(S.D. Tex. 2001) .................................................................................11

*Haddad v. ISI Automation Int'l, Inc.*, No. 04-09-00562-CV,
2010 WL 1708275, at *2 (Tex. App.—San Antonio 2010, no
pet.).....................................................................................................8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.
417, 104 S. Ct. 1868, 80 L. Ed.2d 404 (1984)....................................12

*Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 439
(Tex. App.—Austin 2004, pet. denied)............................................9, 10

*J. McIntyre Mach., Ltd. v. Nicastro*, ___ U.S. ___, 131 S. Ct.
2780, 180 L. Ed.2d 765 (2011) ...........................................................11

*Jackson v. Dean*,
No. 14-23-01044-CV, 2015 WL 224964 (Tex. App.—Houston
[14th Dist.]
Jan. 15, 2015, no pet) .........................................................................14

*Kroll Ontrack, Inc. v. Devon IT, Inc.*, No. CIV. 13-302
DWF/TNL, 2014 WL 2922646, at *4 (D. Minn. June 27, 2014)..........13

*Kytel Int'l Group, Inc. v. Rent-A-Center, Inc.*, 132 S.W.3d 717,
719 (Tex. App.—Dallas 2004, no pet.) .................................................6

*Moki Mac River Expeditions v. Drugg,*
221 S.W.3d 569 (Tex. 2007) ........................................................ 19, 20

*Prosperous Maritime Corp. v. Farwah*, 189 S.W.3d 389, 392-93
(Tex. App.—Beaumont 2006, no pet.)..................................................6

*Retamco Operating, Inc. v. Republic Drilling Co.,*
278 S.W.3d  (Tex. 2009) ........................................................ 20, 21

*Rowland & Roland, P.C. v. Texas Employers Indem. Co.*, 973
S.W.2d 432 (Tex. App.—Austin 1998, no pet.) ........................... 2, 9, 25

*Siemens AG v. Houston Cas. Co.*, 127 S.W.3d 436, 439  (Tex.
App.—Dallas 2004, pet. dism'd)..................................................6

*Villalpando v. De La Garza*, 793 S.W.2d 274, 276 (Tex. App.—
Corpus Christi 1990, no writ) .....................................................3

*Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 188 L. Ed.2d 12
(2014) ............................................................................ passim

*Washington DC Party Shuttle, LLC v. Iguide Tours,*
406 S.W.3d 723 (Tex. App.—Houston [14th Dist.] 2013, pet.
denied) ...............................................................................8

### STATUTES
Tex. Civ. Prac. & Rem. Code § 17.042(1) ...............................................17

### RULES
Tex. R. App. P. 33.1(a)(1) .........................................................9
Tex. R. App. P. 33.1(a)(2) .........................................................9
Tex. R. App. P. 38.1(f)...........................................................10
Tex. R. App. P. 9.4(i)(1) .........................................................27
Tex. R. App. P.9.4(i)(2)(C) ........................................................27
Tex. R. App. P.9.4(i)(3) ..........................................................27
Tex. R. Civ. P. 120a .....................................................3, 4, 5, 8
Tex. R. Civ. P. 120a(3)............................................................7

## PRELIMINARY STATEMENT

The following appellees filed briefs: (1) plaintiffs Sight's My Line, Inc. and Stewart Lantz (collectively "SML"); (2) defendant Riggs, Aleshire & Ray, Inc. ("Riggs"); and (3) defendant Adams & Graham, L.L.P. ("Adams"). Appellee/defendant Blazier, Christensen, Bigelow & Virr did not file a brief or, to appellant Rolnick's knowledge, an answer to the Court's August 5, 2015 notice of late brief.

The three separate appellees' briefs are not identical, but share many arguments and flaws. Two of the briefs make meritless waiver arguments. All of the appellees' briefs misstate facts and ignore uncontroverted evidence they do not like. Some supposed "facts" stated in the briefs have no record references and thus cannot be considered. Tex. R. App. P. 38.1(g). As for the law, appellees rely on cases using reasoning and analytical frameworks that have been called into question by more recent authority appellant Rolnick cites. Appellees also distort or misconstrue cases they do cite. To the extent appellees acknowledge some of Rolnick's authorities, appellees are unable to distinguish them. In sum, none of the appellees' briefs calls into doubt the arguments Rolnick has made or provide applicable support for the trial court's denial of Rolnick's special appearance.

ARGUMENT AND AUTHORITIES

## I.     The Waiver Arguments Have No Merit

Riggs and Adams claim waiver, but there is none. Riggs asserts that Rolnick's special appearances were not sworn and thus the trial court's denial of Rolnick's special appearance cannot be error. Riggs Br. at 10-11. The cases Riggs cites, however, demonstrate that its argument is waiver in disguise. Adams claims that Rolnick has waived any argument that *Rowland & Roland, P.C. v. Texas Employers Indem. Co.*, 973 S.W.2d 432 (Tex. App.—Austin 1998, no pet.) is not applicable and/or controlling. Adams Brief at 11.

### A.     Subsequent Controlling Authority Precludes Reliance on *Casino Magic Corp. v. King* or Other Cases Holding an Unsworn Special Appearance Is a General Appearance

Riggs argues a trial court cannot err by denying an "unsworn" special appearance. When the cases Riggs cites are examined, however, the Court should conclude Riggs is really making a waiver argument in disguise. Those cases rely upon the now-discredited view that an unsworn special appearance is a general appearance, which waives any challenge to personal jurisdiction. At least two courts of appeals have disagreed with the arguments made in the Riggs Brief. Moreover, two Texas Supreme Court opinions preclude adopting Riggs's position.

The primary case upon which Riggs relies is *Casino Magic Corp. v. King*, 43 S.W.3d 148 (Tex. App.—Dallas 2001, pet. denied). In that case,

2

the special appearance pleading did not include a verification, but an affidavit was attached to it. *See id.* The court of appeals held the affidavit did not "verify" the special appearance, because it did not state that the facts in the special appearance pleading were true and correct; rather, the affidavit stated the facts in the **affidavit** were true and correct. *See id.*[1] The court then held this defect made the special appearance "unsworn" and in violation of Rule 120a.

The *Casino Magic* court did not cite any authority for its holding that a defective affidavit makes a special appearance "unsworn." The court, however, did cite *Villalpando v. De La Garza*, 793 S.W.2d 274, 276 (Tex. App.—Corpus Christi 1990, no writ) as support for the following holding: "Because the special appearance was not 'sworn' or 'verified' as required by Rule 120a, . . . the trial judge did not err in denying the special appearance." *Casino Magic*, 43 S.W.3d at 18.

The *Villalpando* opinion's analysis rests on its holding that an unsworn special appearance is a general appearance. *See* 793 S.W.2d at 276. The *Villalpando* court further held that, once a special appearance is overruled, a defendant consents to jurisdiction if he appears at trial through counsel. *See id.* In the twenty-five years since *Villalpando* was

---

[1] The opinion does not quote any part of the affidavit or the special appearance, but states that the special appearance included "a number of jurisdictional 'facts' which the witness failed to attest to in the affidavit." *Casino*, 43 S.W.3d at 18. There is no way to tell what those unverified "jurisdictional facts" were.

decided, subsequent cases have made reliance on its holdings and reasoning misplaced.

First, the Texas Supreme Court has held an unsworn special appearance is not a "general appearance" and thus does not waive the defendant's challenge to personal jurisdiction. *See Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998). In *Dawson-Austin*, the defendant's first responsive pleading combined a special appearance, a motion to quash service of citation, a plea in abatement, a plea to the trial court's jurisdiction, and an original answer subject to all of the above. *See id.* at 321. The defendant verified each part of the combined responsive pleading, **except** the special appearance, an omission she claimed was a typographical error. *See id.* The trial court denied the special appearance, in part because it was unsworn. *See id.* The next day, the defendant filed a motion to reconsider and an amended special appearance, but the trial court denied the amended special appearance. *See id.* The court of appeals affirmed.

The Texas Supreme Court reversed, relying on Rule120a's express contemplation of amendments to "cure defects" and lack of any limitation on the type of defects that can be cured. *See Dawson-Austin*, 968 S.W.2d at 322. The court further rejected the plaintiff's "general appearance" arguments:

Austin's arguments are not only contradicted by both the language and silence of Rule 120a, they misperceive what constitutes a general appearance. One court has explained:

> A party enters a general appearance whenever it invokes the judgment of the court on any question other than the court's jurisdiction; if a defendant's act recognizes that an action is properly pending or seeks affirmative action from the court, that is a general appearance.

[citation omitted] Another court has stated the same proposition in the negative:

> "[A]lthough an act of defendant may have some relation to the cause, it does not constitute a general appearance, if it in no way recognizes that the cause is properly pending or that the court has jurisdiction, and no affirmative action is sought from the court."

[citations omitted]. These courts have accurately restated the principle underlying a general appearance. ***An unverified special appearance neither acknowledges the court's jurisdiction nor seeks affirmative action. While it cannot be used to disprove jurisdiction, it certainly does not concede it.***

*Id.* (emphasis added). The court concluded a defendant does not make a general appearance by filing an unsworn special appearance. *See id.* None of the appellees' briefs mention *Dawson-Austin*, despite its clear

5

applicability. Instead, they rely on *Casino Magic*, which also ignores the *Dawson-Austin* opinion decided almost three years earlier.[2]

Six years later, the Texas Supreme Court decided *Exito Electronics Co., Ltd v. Trejo*, 42 S.W.3d 302 (Tex. 2004). In that case, the defendant filed a verified special appearance and attached a supporting affidavit. *See id.* at 304. The plaintiff did not object to the verification, which did not reveal how the affiant had obtained the requisite personal knowledge of the facts described in the special appearance. *See id.* The plaintiff also did not object to a defective jurat on the affidavit. *See id.* The trial court denied the special appearance. *See id.* The court of appeals affirmed, finding the defendant waived its special appearance by: (1) filing a Rule 11 agreement before filing its special appearance and thus making a general appearance;[3] (2) participating in a hearing on discovery matters before the trial court ruled on the special appearance, which also constituted a general appearance; and (3) not presenting evidence to support the special appearance, because the verification and affidavit were defective and inadmissible. *See id.*

---

[2] Riggs also relies upon three cases following *Casino Magic*: *Prosperous Maritime Corp. v. Farwah*, 189 S.W.3d 389, 392-93 (Tex. App.—Beaumont 2006, no pet.), *Kytel Int'l Group, Inc. v. Rent-A-Center, Inc.*, 132 S.W.3d 717, 719 (Tex. App.—Dallas 2004, no pet.); and *Siemens AG v. Houston Cas. Co.*, 127 S.W.3d 436, 439 (Tex. App.—Dallas 2004, pet. dism'd). *Kytel* and *Siemen's AG* do not mention *Dawson-Austin*. The remaining case cites *Dawson-Austin*, but then refuses to follow it. *Prosperous*, 189 S.W.3d at 393.

[3] The Rule 11 agreement in *Exito* extended the defendant's time to file its first responsive pleading. *See id.* at 304.

The Texas Supreme Court disagreed with the entirety of the court of appeals' waiver analysis. The court noted the plaintiff's failure to object to the affidavit and verification in the trial court. *See id.* at 307. Relying on Rule 120a(3),[4] the court explained:

> Assuming without deciding that the verification and affidavit are defective, we nevertheless disagree with the court of appeals' conclusion. We held in *Dawson–Austin* that an unverified special appearance does not concede jurisdiction. [footnote omitted] In addition, there was more in the record for the trial court's consideration at the time of the special appearance hearing than the verification and affidavit, including the pleadings and the deposition of Exito's corporate representative. If Exito did not provide sufficient evidence in support of its jurisdictional challenge, about which we express no opinion, the trial court should have denied the motion, which it did. That does not, however, absolve the court of appeals from reviewing the merits of Exito's appeal of that ruling. Any defect in proof goes to the merits; it is simply not a waiver issue. The court of appeals therefore erred in holding that a defective verification and affidavit resulted in a waiver of Exito's special appearance.

*Id.* at 307-08.[5] Riggs' failure to acknowledge *Dawson-Austin* or *Exito* is troublesome, since those cases taken together preclude any reliance on

---

[4] Rule 120a(3) states in pertinent part: "The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony."

[5] Relying on *Dawson-Austin*, the supreme court held the Rule 11 agreement was not a general appearance, as it did not ask the trial court to take any action. *See id.* at 306. Participation in the discovery hearing did not effect a waiver either, because the discovery was related to the special appearance and participation was not inconsistent with the jurisdictional challenge. *See id.* at 306-307.

*Casino Magic*, the cases upon which *Casino Magic* relies, or any cases relying upon *Casino Magic*.

In the instant case, none of the appellees objected in the trial court to the lack of verification on the special appearances. CR:261-282, 659-670.. That is not surprising, since Rolnick's affidavit verified all of the factual statements in the special appearances. *See Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 730-31 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (when attached affidavit verifies facts contained in special appearance but not special appearance itself, Rule 120a satisfied even though no verification on special appearance); *Haddad v. ISI Automation Int'l, Inc.*, No. 04-09-00562-CV, 2010 WL 1708275, at *2 (Tex. App.—San Antonio 2010, no pet.). (rejecting plaintiff's argument based on *Casino Magic*, because affiant repeated and testified to facts stated in special appearance).

Even though Riggs is an appellee, its failure to object to the lack of verification on the special appearance waived the complaint. *See Haddad*, 2010 WL 1708275, at *2, (holding appellee waived complaint, reasoning "[i]t is axiomatic that any complaint that a special appearance is not verified must be brought to the trial court's attention to give the moving party an opportunity to cure the defect."). Moreover, at the special appearance hearing in the instant case, the trial court, like the trial court in *Exito*, had before it numerous documents and the entire

depositions of three witnesses. Under the holdings and reasoning in *Dawson-Austin* and *Exito*, Riggs's waiver arguments must be rejected.

## B. Likewise, Adams' Waiver Argument Is Meritless

Adams claims that Rolnick has waived "any argument over the application of *Rowland* to this case" and asserted the Court "should not permit [Rolnick] to challenge *Rowland*'s application in any reply brief." Adams's argument demonstrates a fundamental misunderstanding of appellate preservation of error and waiver.

Texas Rule of Appellate Procedure 33 governs preservation of appellate complaints. An appellant must have presented its complaint to the trial court by making "a timely request, objection, or motion" that states the grounds for the ruling the appellant is seeking from the trial court. *See* Tex. R. App. P. 33.1(a)(1). In addition, the appellant must have obtained an explicit or implied ruling from the trial court on his request, objection, or motion. *See id*. 33.1(a)(2). The type of error that must be preserved is trial court error, not an alleged error by the opposing party in citing inapplicable or distinguishable cases.

The only case Adams cites for its waiver argument is *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, pet. denied), which does not support it. The issue in *Howell* was whether the appellant had waived challenges to the trial court's findings of fact concerning whether a jury demand had been made solely to delay the

9

trial and violated a local rule. *See id.* The appellant did not challenge the findings of fact until its reply brief. *See id.* The appellant's complaint was directed to the trial court's ruling striking its jury demand and claimed trial court error. The case does not mention a need to preserve arguments about its opposing party's reliance upon specific cases. *Howell* thus cannot support the proposition for which it is cited.

In any event, while an appellant generally cannot add new issues in his reply brief, the appellate rules and the cases construing them do not preclude the appellant from responding to and arguing against cases relied upon by the appellees. Adopting Adams' view of error preservation would require a complaining party to object to each case his opponent cites or relies upon in the trial court and obtain a ruling on each of those objections. Moreover, the objections would have to be repeated in that party's opening brief. It is thus not surprising that Adams cites no applicable support for its argument.

In this case, Rolnick claims error with regard to the trial court's ruling denying his special appearance. Under Texas Rule of Appellate Procedure 38.1(f), that issue covers "every subsidiary question that is fairly included." The Court should reject this waiver argument.

## II.    Appellees' "Minimum Contacts" Analysis Is Fundamentally Flawed

As all appellees acknowledge, the Texas Long-Arm Statute "reaches 'as far as the federal constitutional requirements of due process will

allow.'" *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (quoting *Guardian Royal Exch. Assur., Ltd. v. English Chinia Clays, P.L.C.*, 815 S.W2d 223, 226 (Tex. 1991). As a result, "the jurisdictional inquiry under the Texas long-arm statute collapses into a single due-process inquiry." *Guyton v. Pronav Ship Mgmt., Inc.*, 139 F. Supp.2d 815, 818 (S.D. Tex. 2001). The Texas Supreme Court has told appellate courts (and litigants) to rely on United States Supreme Court precedent and other federal cases as well Texas cases. *Am. Type Culture*, 83 S.W.3d at 806.

A.    Appellees Ignore *Walden v. Fiore*

*Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 188 L. Ed.2d 12 (2014) is the United States Supreme Court's most recent specific jurisdiction case. In fact, *Walden* is one of only two[6] specific jurisdiction cases decided by the Court since 1990. *Walden* is significant, because it expounds on which contacts are jurisdictionally significant and restricts the "effects test" to intentional torts and intentional conduct. Riggs and SML do not even cite *Walden*. Adams cites the case once (Adams Brief at 10-11) for its holding that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." *Walden*, 134 S. Ct. at 1123.

---

[6] The other specific jurisdiction case is *J. McIntyre Mach., Ltd. v. Nicastro*, ___ U.S. ___, 131 S. Ct. 2780, 180 L. Ed.2d 765 (2011), which is a stream-of-commerce case.

11

Appellant Rolnick discusses *Walden* extensively in his opening brief at pages 13-14, which makes appellees' silence telling indeed. *Walden* reaffirms that the minimum contacts inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation'" (*id.* at 1121) and then explains rules governing that analysis. As explained below, the appellees' arguments violate these rules.

## B. Only Contacts Rolnick Himself Created Count

*Walden* reaffirms that the defendant-forum-litigation relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed.2d 528 (1985)) (emphasis in original). Thus, the contacts plaintiffs or third parties have with the forum State are not relevant. *See Walden*, 134 S. Ct. at 1122. In other words, another party's or a third party's unilateral activity in the forum cannot be considered. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 417, 104 S. Ct. 1868, 80 L. Ed.2d 404 (1984).

The reason for this rule is sound and explained by the unanimous *Walden* Court as follows: "Due process limits on the State's adjudicative authority principally protect the liberty of the non-resident defendant— not the convenience of the plaintiffs or third parties." *Walden*, 134 S. Ct. at 1122. A plaintiff's contacts with Texas, no matter how significant, cannot determine whether a Texas court violates a non-resident

12

defendant's due process rights by exercising personal jurisdiction over him.

A corollary to the rule is that the forum contacts of an agent or employee acting solely for his principal's or employer's benefit do not count as contacts of the agent individually. *See Kroll Ontrack, Inc. v. Devon IT, Inc.*, No. CIV. 13-302 DWF/TNL, 2014 WL 2922646, at *4 (D. Minn. June 27, 2014) (Pennsylvania lawyers' contacts with Minnesota made at a client's behest and for client's benefit are made "in a purely representative capacity."). Thus, only contacts Rolnick had with Texas in his individual capacity can be considered. And that is the biggest flaw in Appellees' arguments. Everything Rolnick did with regard to the transaction he did in the course of representing SML and/or Lantz. Rolnick has had no other contacts with Texas.

None of the contacts upon which appellees rely can be attributed to Rolnick, who was hired by Lantz (a Florida resident) in Florida to represent SML (a Florida corporation Lantz owned) in its sale of all its Texas assets to a Delaware corporation having its principal place of business in Nevada. CR:137, 139, 166, 382, 383, 502. All of the work Rolnick did in relation to the transaction took place in Florida. Appellant's Brief at 18-20; CR:37, 160-161. Lantz admits that all of Rolnick's contacts with Ray (a Texas lawyer) were as SML's lawyer for SML's and/or Lantz's benefit. CR:386-387. Contacts of an agent on behalf

of his principal cannot be considered when deciding if there is jurisdiction over the agent individually. *See Jackson v. Dean*, No. 14-23-01044-CV, 2015 WL 224964 (Tex. App.—Houston [14th Dist.] Jan. 15, 2015, no pet). Stated another way, all of Rolnick's contacts as SML's lawyer are SML's contacts, and cannot be used to subject Rolnick to the jurisdiction of a Texas court.

Appellees contend that Rolnick's role in the negotiation of the sale subjects him to jurisdiction in Texas, but they are wrong. There is no evidence that any of the negotiations took place in Texas. Appellees do not identify where Rolnick was when the conduct ascribed to him occurred, since doing so would defeat their position. The buyer's representatives were in Nevada when Rolnick spoke with them about the sale. CR:515. The buyer[7] provided the first draft of the Asset Purchase Agreement to Rolnick in Florida. CR:504.

Appellees also rely heavily on the fact that the assets being sold were in Texas. SML owned the assets and made the decision to sell them. There is no evidence that Rolnick had any right to all or part of the sales proceeds.

---

[7] Appellees either refer to the buyer as a "Texas buyer" or imply the buyer is from Texas, but there is no evidence to support this position. The buyer and obligor under the Promissory Note was AOS, a Delaware corporation with its principal place of business in Nevada. CR:444, 575. The fact that AOS was purchasing assets in Texas does not make it a "Texas buyer." The record references given for this contention do not support it.

The presence of SML assets in Texas is a contact of SML and/or Lantz, SML's sole owner. This contact is irrelevant with respect to personal jurisdiction over Rolnick. *Walden*, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State).

Just as irrelevant is Rolnick's knowledge that the assets were in Texas or that SML had strong contacts with Texas. The Court in *Walden* rejected this argument:

> Rather than assessing petitioner's own contacts with Nevada, the Court of Appeals looked to petitioner's knowledge of respondents' "strong forum connections." [citation omitted] In the court's view, that knowledge, combined with its conclusion that respondents suffered foreseeable harm in Nevada, satisfied the "minimum contacts" inquiry. [footnote and citation omitted]

> This approach to the "minimum contacts" analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis. [citation omitted] It also obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself.

15

134 S. Ct. at 1124-1125. Rolnick did not own any part of SML or its assets and did not himself have any assets in Texas. CR:35-36, 390-91. When SML required legal assistance regarding the Texas assets or any of SML's activities in Texas, SML hired a Texas lawyer. CR:390. Appellees' contention that Rolnick provided legal services to SML with respect to a Medicaid investigation or the lease of property in Texas is simply false. Lantz testified that he hired a Texas lawyer – Ray – to deal with the Medicaid investigation. CR:389. There is no evidence that the lawsuit at issue related to or arose from the Medicaid investigation. There is no evidence that Rolnick provided services in Texas with respect to the Medicaid investigation.

## C. Only the Defendant's Contacts with the Forum State Itself Count, Not the Defendant's Contacts with Persons Who Reside There

Appellees rely heavily on communications between Ray and Rolnick, but again, Rolnick was not in Texas when those communications occurred. Rather, the communications consisted of emails and a few telephone calls between Ray, who was in Texas, and Rolnick, who was in Florida. Although SML claims Rolnick testified to "numerous" phone calls into Texas, the record references SML cites do not support that claim at all. SML Brief at 9-10. Ray's billing records reflect only 5 telephone calls with Rolnick. CR:322-330. With one exception, those records, however, do not reflect who initiated the conversations. CR:322-

330. That exception reflects a call from Ray *to* Rolnick. CR:330. Telephone calls from Ray to SML or Rolnick are not contacts of Rolnick with Texas. The same is true with respect to emails.

Here again, appellees' analysis runs afoul of *Walden*, which unambiguously holds that it is the contacts between the defendant and the forum *State* that are the relevant ones, not contacts between the defendant and a plaintiff or co-defendant who are Texas residents. *See Walden*, 134 S. Ct. at 1123. Under *Walden*, the communications between Rolnick and Ray, even if they had been in Rolnick's individual capacity, would not have subjected him to personal jurisdiction in Texas. When, as here, the plaintiff or a third-party plaintiff is the only link between the defendant and the forum, personal jurisdiction will not lie over the non-resident defendant. *See id.* at 1122-23.[8]

In order for contacts with Texas residents to be relevant to personal jurisdiction over the defendant, those contacts must reflect that the defendant purposefully reached out beyond his or her state and into another. *See Walden*, 134 S. Ct. at 1122. The *Walden* court gave two examples of such contacts with a forum State that would be sufficient for jurisdictional purposes. First, a defendant that enters into a contractual

[8] This concept is the reason for the long-standing rule that a Texas resident's contract with an out-of-state party alone will not automatically establish sufficient minimum contacts in Texas. *See Burger King*, 471 U.S. at 478. That is true even though the Texas long-arm statute states that contracting with a Texas resident is "doing business" in Texas. *See* Tex. Civ. Prac. & Rem. Code § 17.042(1).

17

relationship envisioning "continuing and wide-reaching contacts" in Texas would have made contacts with Texas itself. *See id.* The second example given was a defendant's circulation of magazines or other products to purposefully exploit a Texas market. *See id.* No such conduct occurred here.

Rolnick has never sought clients in Texas. CR:36. Rolnick has never appeared in court in Texas. CR:35. Rolnick is not and has never been licensed to practice law in Texas. CR:35. Although Rolnick represented SML over a period of years, all conduct in connection with that representation occurred in Florida. CR:382, 503. Because SML is a Florida corporation and its owner Lantz is a Florida resident, the relationship among SML, Lantz, and Rolnick is and has always been centered in Florida. Ray addressed and sent his bills to Lantz and sent no bills to Rolnick. CR:556, 557.

In sum, appellees' alleged Texas contacts boil down to the following: (1) communications between Rolnick in Florida and Ray in Texas, (2) Rolnick's knowledge that assets of SML, a Florida corporation, were located in Texas, (3) negotiations between Rolnick (while he was in Florida) and the buyer's representative (who was in Nevada), and (4) Rolnick's supposed "direction" to Ray (by correspondence sent from Florida) to file the UCC-1 in Texas. These contacts taken singly or

together are not sufficient to allow a Texas court to exercise jurisdiction over Rolnick.

### D. Rolnick Did Not Purposefully Avail Himself of the Privilege of Conducting Activities in Texas that Invoked the Benefits and Protections of Texas Laws

Texas Supreme Court cases over the past ten years demonstrate that appellees' purposeful availment arguments also fail. "Purposeful availment" generally requires more than a sale of one or more products or services in Texas. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 578 (Tex. 2007); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). That "something more" must be purposeful, such as directing marketing efforts to Texas, operating a sales and distribution network in Texas, and having an office providing sales information and support. *See id*. at 787. Stated another way, "[p]urposeful availment requires that 'a defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction.'" *Moki Mac*, 221 S.W.3d at 578.

In *Moki Mac*, the defendant actively sought to serve the Texas market, established regular communication channels with its Texas customers, utilized some of those Texas customers as *de facto* group leaders "to plan, organize, and promote its trips" involving other Texas residents. *See id*. Although the court found ample conduct amounting to

19

"purposeful availment," it was not sufficiently related to the litigation to justify specific jurisdiction. *See id.* at 588.

The analysis in *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333 (Tex. 2009) further explains what "purpose availment" really means. Retamco, a Texas corporation sued another Texas corporation and obtained a $16,000,000 interlocutory default judgment. *Id.* at 336. Retamco then added a fraudulent transfer claim against a California corporation after learning the defaulted defendant had transferred 72% of certain assets to the California corporation. *Id.* The trial court denied the California defendant's special appearance, but the court of appeals reversed. *See id.* at 337. The Texas Supreme Court reversed. *See id.* at 342.

The court based its reversal on a purposeful availment analysis, reasoning as follows:

> Republic's contacts with Texas were purposeful, not random, fortuitous, or attenuated. Oil and gas interests are real property interests. [citations omitted]. Republic was aware that the oil and gas interests it received were located in Fayette, Dimmit, and Webb Counties, Texas. Thus, Republic purposefully took assignment of Texas real property. And while Republic may not have actually entered the state to purchase this real property, "[j]urisdiction ... may not be avoided merely because the defendant did not physically enter the forum state." [citation omitted] ***Republic, by taking assignment of Texas real property, reached out and created a continuing relationship in Texas.*** Under the assignment, *it is liable for*

20

> *obligations and expenses related to the interests.*
> *This ownership also allows Republic to "enjoy ...*
> *the benefits and protection of [Texas laws.]'*
> [citation omitted]. *Unlike personal property,*
> *Republic's real property will always be in Texas,*
> *which leaves no doubt of the continuing*
> *relationship that this ownership creates.*

*Id.* at 339 (emphasis added). There is no evidence that Rolnick created or even sought such a continuing relationship with Texas. There is no evidence that the flat fee Rolnick received from SML for all the work done on the transaction was a benefit or protection of Texas law. Indeed, the evidence instead conclusively demonstrated that Rolnick's only contacts with Texas were with another lawyer chosen by SML to advise on Texas law. The analysis in *Retamco* defeats appellees' assertions of purposeful availment.

**E.      Appellees Cannot Rely on Any Effects in Texas of Rolnick's Florida Conduct or Where Rolnick Supposedly Directed a Tort**

Appellees also contend that the effects of Rolnick's alleged legal malpractice were felt in Texas, because the assets were lost there. That argument has a number of flaws. First, *Walden* rejects the "effects" analysis some lower courts had adopted based on *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). *Calder* was a libel suit brought by a California actress in a California state court against a reporter and editor employed by the National Enquirer in Florida. The article at issue had been written and edited by the defendants in Florida. *See Walden*, 134 U.S. at 1123. The crux of *Calder* was not that the

21

reputation-based effects of the libelous publication were felt by the plaintiff in California. *Walden*, 134 U.S. at 1123-1124. Instead, the *Walden* Court "recognized that the defendant's activities" had focused on the plaintiff, but explained that the Court's jurisdictional analysis focused on more than that. *See id* at 1123. The contacts the *Calder* court had relied upon included phone calls by the reporters to California sources for the information in the article, the focus of the article on the plaintiff's activities in California, the wide circulation of the publication in California, and the fact that the "brunt" of the reputational injury was suffered by the plaintiff there. *See id*.

The *Walden* court then explained:

> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous the newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. [citation omitted.] Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel, [citation omitted], the defendants' intentional tort actually occurred *in* California. [citation omitted.] In this way, the "effects" caused by the defendants' article - i.e., the injury to the plaintiff's reputation in the estimation of the California public - connected the

22

> defendants' conduct to *California*, not just to the plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, suffice to authorize the California court's exercise of jurisdiction.

*Walden*, 134 U.S. at 1124 (emphasis in original). The *Walden* court then emphatically rejected the argument that personal jurisdiction over a non-resident can rest on mere injury to a foreign resident. *See id* at 1125.

"The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." It is the existence of a meaningful connection between Rolnick and Texas that is missing in this case.

Prior to *Walden*, the Texas Supreme Court also had rejected the notion that committing a tort "in" Texas or a tortfeasor's knowledge that the injury will be felt by a particular Texas resident was enough to sustain personal jurisdiction over a non-resident. *See Michiana*, 168 S.W.3d. at 788-89. Despite appellees' contentions to the contrary, there is no evidence that Rolnick "committed a tort in Texas."

Appellees rely on Rolnick's out-of-state conduct in Florida in claiming that he committed legal malpractice in Texas. This is nothing more that the "direct-a-tort" theory *Michiana* also rejected. If jurisdiction turns on where a defendant directed a tort, the focus shifts to the relationship among the plaintiff (rather than the defendant), the forum and the litigation. *See id.* at 790. Moreover, "directed-a-tort jurisdiction

[equates] the jurisdictional inquiry with the underlying merits." *Id.* Taken to its logical end, a defendant would defeat personal jurisdiction by establishing it had not committed a tort. *See id.* at 790-791.

In any event, there is no evidence that any of Rolnick work on the transaction in question took place in Texas.

## III. Appellees Have No Answer for Rolnick's Cases Involving Nonresident Attorneys and Law Firms

In his Appellant's Brief at 16-17, Rolnick has cited numerous Texas cases applying the rule that there is no specific jurisdiction over a nonresident attorney or law firm who exercises legal judgment, forms legal opinions, and does legal work for the client in states other than Texas. The same analysis applies to nonresident physicians who send prescriptions from another state to Texas and/or direct a Texas resident's care. *See Brocail v. Anderson*, 132 S.W.3d 552, 555-556 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). The Texas Supreme Court in *Moki Mac*, 221 S.W.3d at 588, expressly approved *Brocail*'s holding that there was no jurisdiction over the nonresident physician, because "any tort occurred in the exercise of medical judgment" in another state, rather than communicating that judgment to Texas. *See id.* Although Rolnick cited and discussed *Brocail* in his brief at 17-18, appellees do not mention it.

Appellees rely on inapplicable cases. For example, SML relies on *Mountain States Employers Council, Inc. v. Cobb Mechanical Contractors, Inc.*, 2008 WL 2639711 (Tex. App.—Fort Worth July 3, 2008, no pet), in which the out-of-state attorney appeared at and represented his client during an NLRB hearing held in Texas. Rolnick did not provide any legal services in Texas.

The Tennessee law firm in *Rowland v. Rowland*, 973 S.W.2d 432 (Tex. App.—Austin 1998, no pet.) was subject to personal jurisdiction in Texas because it paid the proceeds of a Tennessee wrong death suit to its Texas clients without protecting a Texas insurer's lien. Here again, Rolnick had no similar contact with Texas.

## IV. SML's "Agency" Theory Is Meritless

SML claims that jurisdiction over Rolnick can be based on an agency theory under which Rolnick is the principal and Ray and BCBV are the agents. None of the cases SML cites are even remotely applicable. While Rolnick agrees with the rule that an agent's Texas contacts are attributed to his principal, there is no evidence of an agency relationship between Ray and BCBV as the purported agents and Rolnick as the principal. Ray and Rolnick were lawyers representing the same clients—SML and Lantz. As explained earlier in this brief, Ray sent his bills to SML, not Rolnick. Although Rolnick advised Lantz to hire Texas counsel to ensure SML's rights were protected under Texas law, Lantz admitted

he chose Ray based on previous work Ray had done for SML. CR:384-385. Lantz also testified that he contacted Ray asked him to serve as Texas counsel in the matter. CR:384. Upon checking the record references in the agency portion of SML's brief, the Court should find they do not support the factual assertions made.

For all of the above reasons, the Court should reverse the trial court's denial of Rolnick's special appearance and render judgment dismissing the claims against him for lack of subject matter jurisdiction.

Respectfully submitted,

**RUTH G. MALINAS**
Texas Bar No. 08399350
**Plunkett & Griesenbeck, Inc.**
Catholic Life Building, Suite 900
1635 N.E. Loop 410
San Antonio, Texas 78209
(210) 734-7092 (telephone)
(210) 734-0379 (facsimile)
rmalinas@pg-law.com


   /s/ *Ruth G. Malinas*
**RUTH G. MALINAS**

**COUNSEL FOR APPELLANT
HERBERT ROLNICK**

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4, the undersigned certifies this Appellant's Reply Brief complies with the type-volume limitations of the Rule. The undersigned prepared the Reply Brief using Microsoft Word 2013 and relied on that software's word-count function.

Exclusive of the exempted portions listed in Texas Rule of Appellate Procedure 9.4, the brief contains 6122 words.

/s/ Ruth G. Malinas
RUTH G. MALINAS

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the foregoing Appellant's Reply Brief has been forwarded this 11th day of September, 2015, to the following attorneys of record via electronic service:

J. Hampton Skelton
Brandon Duane Gleason
Skelton & Woody
248 Addie Roy Road, Suite B-302
Austin, TX 78746
hskelton@skeltonwoody.com
bgleason@skeltonwoody.com
**Attorneys for Sight's My Line, Inc.,
a Florida Corporation and
Stewart Lantz**

Scott R. Kidd
Scott V. Kidd
Kidd Law Firm
819 W. 11th Street
Austin, TX  78701
scott@kiddlawaustin.com
svk@kiddlawaustin.com
**Attorneys for Riggs, Aleshire & Ray**

Michael B. Johnson
Salvador Davila
Thompson, Coe, Cousins & Irons, LLP
701 Brazos, Suite 1500
Austin, TX  78701
mjohnson@thompsoncoe.com
sdavila@thompsoncoe.com
**Attorneys for Blazier, Christensen,
Bigelow & Virr**

Robert E. Valdez
Jose "JJ" Trevino, Jr.
Valdez, Jackson & Trevino, PC
1826 North Loop 1604 West, Suite 275
San Antonio, TX  78248
revaldez@vjtlawfirm.com
jtrevino@vjtlawfirm.com
Attorneys for Adams & Graham

/s/ Ruth G. Malinas
RUTH G. MALINAS